Harrisburg School District, Appellant, *v.* Pennsylvania Interscholastic Athletic Association.

Argued January 12, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Ronald M. Katzman,* with him *James W. Evans,* and *Goldberg, Evans & Katzman,* for appellant.

*Rod J. Pera,* with him *William M. Young, Jr.,* and *McNees, Wallace & Nurick,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, September 19, 1973:

This case arose from the aftermath of a September 17, 1971, football game between Harrisburg High School ("Harrisburg") and Cedar Cliff High School ("Cedar Cliff") involving post-game incidents of fighting among the game's spectators. While the record is imprecise, it does appear that there was fighting in the area of the stadium parking lot and that at least three persons were injured: one young woman suffered a cut head, a male student sustained a fractured jaw and another unidentified male was beaten with a lead pipe. The initial outbreaks prompted a stadium announcement intended to restore order. The announcement had the opposite effect and fighting became more widespread.

Upon learning of the events following the Harrisburg-Cedar Cliff game, John W. Bolten, President of the Central Pennsylvania Football League ("CPFL"), convened September 21 and 23, 1971, fact finding meetings attended by Donald R. Meehan, principal of Harrisburg, Louis S. Edwards, principal of Cedar Cliff, E. Jerry Brooks, chairman of the Pennsylvania Interscholastic Athletic Association ("PIAA") District III and Theodore R. Wagner, Jr., Executive Director of the PIAA. As a result of these meetings, CPFL censured Harrisburg and warned that future incidents would result in suspension from the CPFL. A report of these proceedings and the CPFL action was sent to the District III PIAA Committee.

On September 28, 1971, at a regularly scheduled meeting of the PIAA District III, the Harrisburg and Cedar Cliff principals and CPFL President Bolten offered testimony on the Harrisburg-Cedar Cliff incident. After hearing testimony, PIAA District III censured

Harrisburg and imposed two years' minimum probation, which probation included the proscription of Harrisburg's participation in any athletic contests or practices beginning later than 4:00 p.m.[1]

Pursuant to PIAA constitutional procedure, Harrisburg requested, and was granted, an appeal to the PIAA Board of Control. After testimony was heard by the Board of Control on October 16, 1971, the action of PIAA District III was sustained.

Harrisburg (appellant) filed a complaint in equity in the court below on October 18, 1971, seeking, *inter alia*, a preliminary injunction. The court found no irreparable harm and denied the preliminary injunction on October 29, 1971. On January 4, 1972, PIAA (appellee) moved for summary judgment which was denied

---

[1] The PIAA is an unincorporated, voluntary association of public high schools, generally responsible for the regulation of interscholastic athletic competition among its members. The PIAA is administered state-wide by a Board of Control composed of members elected from twelve geographic districts; each district elects a committee to administer PIAA policy at the local level.

High schools gaining membership voluntarily submit themselves to the PIAA Constitution. Article XII of the Constitution provides sanctions which may be imposed against member schools for transgressions of PIAA policy. Article XII provides, in pertinent part, as follows:

"Section 2. Suspension.

. . . .

"C. A school may be suspended when the conduct of its administration, faculty, coaches, team, students, or team followers is unsportsmanlike and results in actions which are detrimental to individual, school, and public welfare and which are prejudicial to the purposes of this Association.

"Section 6. Public Censure.

"A school or the individual responsible for the violation may be publicly censured in addition to, or in lieu of, such other penalties as provided by the By-Laws.

"Section 7. Probation.

"A school may be placed on probation in addition to, or in lieu of, such other penalties as provided by the By-Laws."

April 19, 1972. On July 12, 1972, the Honorable John A. MacPhail, specially presiding, dismissed Harrisburg's complaint and the appellant filed exceptions to Judge MacPhail's decree. On September 29, 1972, the court en banc, after hearing appellant's exceptions, entered a final decree affirming the dismissal of Harrisburg's complaint. This Court obtained jurisdiction on direct appeal from the Court of Common Pleas. Act of July 31, 1970, P. L. 673, §202, 17 P.S. §211.202(4).

The various questions raised by this appeal can be narrowed to the following: (1) Was the evidence adduced in the PIAA administrative proceedings and the court below sufficient to sustain the finding of a violation of PIAA provisions justifying the imposition of the sanctions imposed against appellant Harrisburg? (2) Was appellant Harrisburg deprived of due process by the application of PIAA procedure in this situation?

Generally, findings of fact by the chancellor will not be disturbed unless they are unsupported by the evidence or demonstrably capricious. *Shapiro v. Shapiro,* 424 Pa. 120, 224 A. 2d 164 (1966); *Lanning Will,* 414 Pa. 313, 200 A. 2d 392 (1964); *Sterrett v. Sterrett,* 401 Pa. 583, 166 A. 2d 1 (1960); *Brown v. Gresh,* 402 Pa. 35, 165 A. 2d 629 (1960). In reviewing the findings of the hearing judge, the test is not whether we would have reached the same result on the evidence presented, but rather whether, on due consideration of the evidence, a judge could reasonably have reached the chancellor's conclusion. *Yuhas v. Schmidt,* 434 Pa. 447, 258 A. 2d 616 (1969); *Masciantonio Will,* 392 Pa. 362, 141 A. 2d 362 (1958). Though the record account of what happened on September 17, 1971, is unclear in some respects, we believe that the decision reached by the chancellor, a decision concurring in the conclusions of the CPFL, PIAA District III and the PIAA Board of Control, and affirmed by the court en banc, is adequately supported by the evidence.

The court below attributed critical importance to the Harrisburg principal's admissions of responsibility with respect to the appellant high school's culpability in the September 17, 1971, incident. The court deemed principal Donald Meehan's admissions factually decisive because of the provisions of Article IX of the PIAA Constitution: "Section 1. Responsibility of Principal. The principal of each school, in all matters pertaining to the interscholastic athletic relations of his school, is responsible to this Association. He may delegate some of these powers but such delegation shall not relieve him of responsibility for any infraction, by his school, of the Constitution and By-Laws of this Association."

The Harrisburg principal offered the following testimony before the September 28, 1971, meeting of PIAA District III: "We can accept, and it is not a lot of fun to, but I will accept, on behalf of the Harrisburg High School, the responsibility as is outlined by the PIAA rules for the behavior, and it is a [sic] awesome responsibility, but I do not want to shrink from it. I don't think we can go back. I am here to plead for Harrisburg High School athletics. What you have reported at this table today, I do not deny one bit of it." During the same meeting, District III committee questioning elicited the following: "MR. PALMER (District III committee member): The things that we were concerned about were the razor blades, the ice picks, the broken bottles, the chains, the deadly weapons that can kill. I think we kind of equated those with the Harrisburg people and not the Cedar Cliff people. MR. MEEHAN (Harrisburg principal): That is correct."

Though we agree with appellant that the record of what actually occurred after the Harrisburg-Cedar Cliff game is unclear, we believe nonetheless that there is evidence sufficient to justify the lower court's findings. The decision of the chancellor is warranted by the assumption of responsibility by Harrisburg's Donald Mee-

han when considered in the context of the indigenous law of the PIAA which fixes the "responsibility for any infraction" upon the principal of the offending school.

Appellant's claim of the denial of due process is founded upon the following specific allegations: appellant was not given notice of the charges against it or the nature of the proceedings involved; the PIAA provisions under which appellant was sanctioned are unconstitutionally vague; and the appellant was denied the opportunity to be heard because PIAA procedure is legally insufficient. The consideration of these questions is contingent preliminarily upon our affirmative answers to the questions whether the PIAA's conduct of its affairs constitutes state action, and collaterally, whether the action of the PIAA warrants judicial interference.

The question whether the affairs of a state-wide athletic association constitute state action in the constitutional sense has not been previously considered by this Court. We agree with appellant's position that affairs of the PIAA constitute state action. The appellee association is composed of all the public high schools in this Commonwealth except those in Philadelphia. The PIAA is funded by the payment of membership fees from public school moneys, and so ultimately by the Commonwealth's taxpayers, and from the gate receipts of athletic events between public high schools. Judge GODBOLD, writing for the Fifth Circuit Court of Appeals, spoke to the issue of whether state-wide athletic associations' activities constitute state action in *Louisiana High School Athletic Association v. St. Augustine High School*, 396 F. 2d 224, 227 (5th Cir. 1968): *"There can be no substantial doubt that conduct of the affairs of [a state-wide athletic association] is state action in the constitutional sense.* The evidence is more than adequate to support the conclusion . . . that the

Association amounts to an agency and instrumentality of the State of Louisiana. Membership of the Association is relevant—85 per cent of the members are state public schools. The public school principals, who nominally are members, are state officers. . . .

"Funds for support of the Association come partly from membership dues, largely from gate receipts from games between members, the great majority of which are held in state-owned and state-supplied facilities." (Emphasis added.)[2]

Notwithstanding our determination that the activities of the PIAA constitute state action, there are compelling reasons why judicial interference in this context would be inappropriate. The appellant has referred us to several cases outside this jurisdiction (*see, e.g., Marjorie Webster Junior College, Inc. v. Middle States Ass'n of Colleges and Secondary Schools, Inc.*, 432 F. 2d 650 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 965 (1970)) which purport to stand for the proposition that judicial interference in the affairs of private associations is the rule rather than the exception. Our reading of these cases indicates that such interference is appropriate only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional ad-

---

[2] *See also, Quimby v. School District No. 21 of Pinal County*, 10 Ariz. App. 69, 455 P. 2d 1019 (1969).

Appellee cites the case of *Sanders v. Louisiana High School Athletic Ass'n*, La. App., 242 So. 2d 19 (1970), for the proposition that the state-wide athletic association's affairs do not constitute state action. The Louisiana court distinguished *Sanders* from *St. Augustine* on the theory that *St. Augustine* involved the association's racial discrimination, while *Sanders* involved the eligibility of the appellant to participate in his high school's athletic program. This factual distinction could not materially affect the outcome of the question of whether the association's activities constitute state action, though it does affect the resolution of the question of whether judicial interference is warranted.

vantages[3] or fundamental constitutional rights.[4] We believe that the general rule with respect to high school athletic associations, insofar as it has been enunciated, is one of judicial non-interference unless the action complained of is fraudulent, an invasion of property or pecuniary rights, or capricious or arbitrary discrimination. *State ex rel. Ohio High School Athletic Ass'n v. Judges of the Court of Common Pleas*, 173 Ohio 239, 181 N.E. 2d 261 (1962); see, *Sanders v. Louisiana High School Athletic Ass'n*, La. App. 242 So. 2d 19 (1970).

Alongside the general rule of judicial non-interference in the affairs of private associations stands our unwillingness to involve this Court in controversies of questionable urgency. The appellant has not been suspended from the PIAA. Harrisburg has continued to conduct its athletic program with the single significant impediment that it must begin its games and practices before 4:00 p.m.[5] "[The] probationary plaintiffs have not been aggrieved in the constitutional sense so as to challenge the regulations here involved, the procedure followed, or the punishment imposed. Being placed on probation . . . does not . . . rise to the level of the deprivation of a right secured by the Constitution requiring judicial relief." *Sill v. Pennsylvania State University*, 318

---

[3] *Marjorie Webster Junior College, Inc. v. Middle States Ass'n of Colleges and Secondary Schools, Inc.*, involved an action by a proprietary college against a regional college accreditation association to enjoin the enforcement of a rule denying accreditation to non-profit organizations. See also, *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A. 2d 791 (1961).

[4] *Louisiana High School Athletic Association v. St. Augustine High School*, supra, involved a class action brought by an all-black high school to enjoin the maintenance of a segregated system of high school athletics by the state athletic association.

[5] We are not moved by appellant's position that a violation of its probation could lead to suspension and a virtual curtailment of interscholastic athletics. The facts before us are that Harrisburg has been placed on probation. Appellant has not been suspended.

F. Supp. 608, 617 (M.D. Pa. 1970), *aff'd,* 462 F. 2d 463 (3d Cir. 1972).

Though the decision of this matter does not rest upon an analysis of appellant's claim of the denial of due process, our reading of the record does not indicate constitutional irregularity. Appellant was afforded notice of the action taken against it and has availed itself of the opportunity to be heard. When the sanction of probation was imposed, the Board of Control of the PIAA granted and heard the appeal of the decision of its District III Committee. Appellee has moved to curtail the disruptive behavior of Harrisburg followers—a behavioral pattern which, by the *admission* of Harrisburg's principal, has characterized its athletic contests—by removing the impetus of nighttime competition. The Constitution does not compel our intervention under these circumstances.

Decree affirmed. Each party to pay own costs.

Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.

Mr. Justice NIX and Mr. Justice MANDERINO dissent.