**Bradley S. BOYLE, a minor by Jerome BOYLE, his Parent and Natural Guardian,**

v.

**PENNSYLVANIA INTERSCHOLASTIC ATHLETIC ASSOCIATION, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1996.

Decided March 22, 1996.

Reargument Denied May 21, 1996.

---

William M. Young, Jr., for appellant.

Nicholas E. Timperio, Jr., for appellee.

Before DOYLE and FRIEDMAN, JJ., and MIRARCHI, Senior Judge.

DOYLE, Judge.

The Pennsylvania Interscholastic Athletic Association, Inc. (PIAA) appeals from an order of the Court of Common Pleas of Fayette County, which entered a preliminary injunction enjoining PIAA from prohibiting Bradley S. Boyle from competing in interscholastic basketball at Geibel Catholic High School (Geibel) during the 1995–1996 school year.

The relevant facts are as follows. Boyle is a junior at Geibel, having transferred there after completing the 10th grade at Frazier High School (Frazier). Prior to transferring to Geibel, he participated in interscholastic basketball at Frazier, under the auspices of PIAA, during both the 1993–1994 and 1994–1995 school years.

Prior to both his freshman and sophomore years of high school, Boyle expressed unhappiness at having to continue to attend Frazier and applied to attend Geibel instead. However, due to his family's financial inability to afford the tuition at Geibel, he was unable to make the transfer at that time.

On December 17, 1994, Bradley Boyle's father, Jerome Boyle, was involved in an altercation at a local tavern with Thomas "Woody" Salisbury, the head football coach at Frazier and a teacher in the Frazier School District. Salisbury and Jerome Boyle initially only exchanged harsh words with

each other, but Salisbury then threw a beer bottle at Jerome Boyle, hitting him in the face and causing a laceration under his left eye. Criminal charges were subsequently filed against Salisbury based on these actions.

Although Salisbury took a sabbatical leave for the Spring semester of the 1994–1995 school year, he was scheduled to return for the 1995–1996 school year. Boyle testified that the incident made him feel uncomfortable attending Frazier, particularly since the assistant basketball coach was a good friend of Salisbury and was present when his father was assaulted. Although Boyle testified that Salisbury had not actually bothered him since the incident with his father, he did testify that Salisbury had harassed him prior to that time. In addition, Boyle stated that Salisbury's son was a member of his class at Frazier and that attending school with him made Boyle feel uncomfortable. Furthermore, Jerome Boyle testified that the altercation between Salisbury and himself began because of a disagreement concerning his son Bradley Boyle.[1]

As a result of a financial settlement between Jerome Boyle and Salisbury stemming from the tavern incident, Boyle was financially able to transfer to Geibel for his junior year at the beginning of the 1995–1996 school year. On July 5, 1995, the principal of Geibel submitted a "Member School Form for a decision on Athletic Eligibility," requesting a decision by the District Committee of PIAA District VII regarding Boyle's eligibility for the upcoming academic year under the PIAA Transfer Rule.

The PIAA Transfer Rule is found in Article VI, Section 2 of PIAA's By–Laws, and provides in pertinent part as follows:

> Except as otherwise provided in this section, a student who is not eligible under a section of this Article shall be ineligible to participate in each sport in which he participated within a period of one year immediately preceding the date of transfer.

(Reproduced Record (R.R.) at 105a.) Although Boyle conceded that he was not eligible under any of the specifically enumerated exceptions to the Transfer Rule, he alleged that the unique circumstances of his case warranted a finding of eligibility under Article VI, Section 15 of the By–Laws, a residuary "catch all" provision which provides that in "Exceptional Cases" the District Committee may confer eligibility where the transfer is not covered by any other specific provision under Article VI.

Based solely on Boyle's school records and a letter from his parents, the District Committee found that Boyle was ineligible to play basketball in the 1995–1996 academic year.[2] In response to this decision, Boyle requested a hearing before the District Committee. On September 13, 1995, the District Committee held a hearing at which it again found that Boyle was ineligible to participate in basketball under the Transfer Rule.[3]

---

1. Although Bradley Boyle has transferred to Geibel, his brother continues to be a student at Frazier. The PIAA attempts to use this fact to discredit the need for Boyle to transfer schools and to question his motives in doing so. However, the two brothers' situations are different in at least three important respects. First, Boyle's brother is not involved in the basketball program at Frazier and therefore does not have to play under the assistant basketball coach, a friend of Salisbury. Second, there is no evidence that any of Salisbury's children are classmates of Boyle's brother. Third, the incident involving Salisbury and Boyle's father involved an argument concerning Boyle, not his brother. Thus, what might have been an intolerable situation for Boyle could have been at least tolerable to his brother. Furthermore, Jerome Boyle stated before the trial court that his family would like to send both children to Geibel but was financially unable to do so.

2. Although it found that Boyle was ineligible for basketball, the District Committee did find him eligible to play baseball since he had not played that sport in the past year.

3. The District Committee found that Boyle was ineligible under Article VI, Sections 2 and 6 of PIAA's By–Laws. Section 6 is the general rule governing eligibility for students transferring between public and private schools. Since Boyle did not meet the criteria allowing for immediate eligibility under Section 6, he could have been found to be eligible only if it was determined that he fell within the "Exceptional Cases" exception of Section 15. Although the District Committee determined that he did not fall within that provision, implicit in its determination was the fact that his transfer was not the result of recruiting or in any way done for an athletic purpose. If this were not the case, the District Committee

Boyle appealed this decision to PIAA's Board of Control. In addition to the testimony of Boyle, Boyle's parents, the principal of Geibel, and the athletic director of Geibel, the Board of Control considered a crime report of the North Belle Vernon Police Department relating to the incident between Boyle's father and Frazier's football coach, a letter from the Victim/Witness Coordinator for Westmoreland County, and letters from the principals of both Geibel and Frazier. By a letter dated October 27, 1995, the Board of Control affirmed the decision of the District Committee.

The Board of Control based its decision in large part on a letter from Dr. Richard Martin, the Principal of Frazier, as well as guidelines which it had established (Section 15 Guidelines) to help District Committees interpret and implement the Exceptional Cases exception (Article VI, Section 15) to the Transfer Rule. These guidelines provide that a transferring student may be declared eligible in the following three circumstances:

1. Involuntary transfers, such as where a student is expelled from school and must therefore necessarily transfer to another school.

2. Where a student attending a school at which he must pay tuition (either public or private) transfers to another school because of financial inability to continue to pay the tuition.

3. *Where the principal of the sending school and the principal of the receiving school inform the District Committee in writing, or orally at a hearing, that each believes that the transfer was not a result of recruiting and was not in whole or in part for any athletic purpose.* (Emphasis added.)

(PIAA's Exhibit G; R.R. at 143a.) However, the three examples listed above do not con-

stitute the sole reasons which may justify granting an exception under Article VI, Section 15 of PIAA's By–Laws. The guidelines expressly state that the above "list is not intended to be exhaustive, or to limit the District Committee's use of Section 15 in other situations in which the cause of transfer is not covered by the specific provisions of the transfer rule." (PIAA's Exhibit G; R.R. at 143a.)

Dr. Martin, the principal at Frazier, in his letter stated in relevant part:

First, I cannot say one way or another whether recruiting was involved. There are rumors to that effect; however, neither I nor my athletic staff are in a position to offer any proof one way or another. Officially, Frazier High School does not formally raise the issue of recruiting.

Second, as to the athletic intent and purpose, **I must report that my athletic department is not willing to say that this transfer was without athletic intent.** It is our understanding that previous efforts to enroll [Boyle] at Geibel included discussions of basketball.

Third, as principal, I assure you and the PIAA Board of Control, just as I did [Boyle's] family at the District VII hearing, that [Boyle] was not, and would not ever be, subjected to any kind of harassment or other inappropriate treatment here at Frazier High School.

(Dr. Edward Martin's letter, 10/5/95; R.R. at 139a.) (Emphasis added.) Based on this letter, the Board of Control concluded that Boyle had failed to establish that he should be declared eligible under the third exception to the Transfer Rule listed in the Section 15 Guidelines, since Dr. Martin was unwilling to unequivocally state that Boyle's transfer was not the result of recruiting and was not for an athletic purpose.[4] While the Board of

---

would have been obliged to find him ineligible for *all* sports, not just basketball, under Article VI, Section 11 of PIAA's By-Laws, which bans participation in all sports for one year if the transfer was "in whole or in part for any athletic purpose."

**4.** As additional reasons for denying Boyle eligibility, the Board of Control stated that it was persuaded by the fact that Boyle's brother continued to attend Frazier despite the incident be-

tween Boyle's father and Salisbury, and also by the fact that there was only one minor encounter between Boyle and Salisbury after the incident at the bar, relating solely to the question of why Boyle was not participating in the basketball weight program. Regarding the first reason, Boyle and his father testified to several reasons why Boyle's brother continued to attend Frazier. Among these were financial hardship and the fact that Boyle's brother did not have to associate

Control did not conclude that Boyle had in fact been recruited or that he transferred to Geibel for an athletic purpose, it denied him a Section 15 exception because of Dr. Martin's inability or unwillingness to state that Boyle had transferred for a non-athletic purpose.[5]

On November 14, 1995, Boyle filed a complaint and a petition seeking injunctive relief in the Court of Common Pleas of Fayette County in which he sought to prevent PIAA from denying him eligibility under the Transfer Rule contained in Article VI of its By-Laws. On November 28, 1995, a preliminary injunction hearing was held at which the trial judge heard testimony and received documents into evidence substantiating the facts as summarized above. By an order dated November 30, 1995, the court of common pleas granted Boyle's request for a preliminary injunction against PIAA. On December 7, 1995, PIAA appealed that decision to our Court.[6]

Initially, before addressing the merits of PIAA's appeal, we must stress that the present case involves the granting of a preliminary, as opposed to a permanent injunction. The prerequisites to obtaining a preliminary injunction were set forth by our Supreme Court in *Albee Homes, Inc. v. Caddie Homes, Inc.*, 417 Pa. 177, 181, 207 A.2d 768, 770–71 (1965), as follows:

> [F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing [to grant the preliminary injunction] than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the

alleged wrongful conduct. Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded. (Citations omitted.)

 Nevertheless, unlike a party seeking a permanent injunction, a party "seeking a preliminary injunction is not required to establish his or her claim absolutely." *Pennsylvania Interscholastic Athletic Association, Inc. v. Geisinger*, 81 Pa.Cmwlth. 421, 474 A.2d 62, 65 (1984); *see also Fischer v. Department of Public Welfare*, 497 Pa. 267, 439 A.2d 1172 (1982). Accordingly, our scope of review in cases involving the granting of a preliminary injunction is very narrow. *Geisinger*. We do not review the full merits of the controversy, but rather determine, based on the record, whether there were any reasonable grounds which would justify the trial court's decision. *Id.* "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial judge]." *Id.* 474 A.2d at 65.

Having set forth the standard under which we must review the present case, we will now address the various legal arguments raised by PIAA on appeal. PIAA presents the following issues for our review: (1) whether Boyle stated a cause of action against PIAA in his complaint; (2) whether Boyle demonstrated that he had a good prospect of establishing that he would ultimately prevail

---

with Salisbury or other members of Frazier's Athletic Department, since he did not participate in the athletic program at Frazier. *See supra* note 1. We must also point out that the Board of Control's second reason conflicts with the unrebutted testimony of Boyle before the court of common pleas in which he stated that there had been no contact between Salisbury and himself after the incident. (Notes of Testimony (N.T.) at 23; R.R. at 31a.) Regardless of which version is correct, it is fully understandable that Boyle and Salisbury would have little or no contact with each other, since Salisbury has been on sabbatical leave almost the entire time since the incident.

5. Apparently, the Board of Control concurred with the District Committee's belief that Article VI, Section 11 of·PIAA's By-Laws, which bans participation in all sports for one year where the transfer is the result of recruiting or for an athletic purpose, did not apply to Boyle's case. *See supra* note 3.

6. On December 14, 1995, PIAA filed an application for expedited consideration of its appeal which was granted by an order of this Court dated December 18, 1995.

against PIAA under the standard enunciated by the Pennsylvania Supreme Court in *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association*, 453 Pa. 495, 309 A.2d 353 (1973); (3) whether Boyle has a property right which entitles him to participate in interscholastic athletics; (4) whether Boyle was denied procedural due process under the Fourteenth Amendment to the United States Constitution; (5) whether Boyle was capriciously or arbitrarily discriminated against by PIAA; and (6) whether Boyle was denied his rights under the free exercise clause of the First Amendment by PIAA.

■ PIAA's principal argument is that Boyle does not have a judicially recognized cause of action against it, because his eligibility to play interscholastic basketball does not involve a property right or other constitutionally protected interest which would entitle him to procedural due process under the Fourteenth Amendment to the United States Constitution. *See Adamek v. Pennsylvania Interscholastic Athletic Association, Inc.*, 57 Pa.Cmwlth. 261, 426 A.2d 1206 (1981) (holding that participation in interscholastic athletics is not a property right which entitles one to procedural due process); *Pennsylvania Interscholastic Athletic Association, Inc. v. Greater Johnstown School District*, 76 Pa. Cmwlth. 65, 463 A.2d 1198 (1983).

■ Furthermore, PIAA notes that in *Harrisburg School District*, the Pennsylvania Supreme Court strictly limited the power of the judiciary to interfere with decisions made by PIAA as follows:

> Notwithstanding our determination that the activities of the PIAA constitute state action, there are compelling reasons why judicial interference in this context would be inappropriate. . . . We believe that *the general rule with respect to high school athletic associations, insofar as it has been enunciated, is one of judicial non-interference unless the action complained of is fraudulent, an invasion of property or pecuniary rights, or capricious or arbitrary discrimination.*

*Harrisburg School District*, 453 Pa. at 502–503, 309 A.2d at 357 (emphasis added). Relying on the above quoted language from *Harrisburg School District*, as well as this Court's decision in *Adamek*, PIAA argues that not only is Boyle precluded from prevailing under a due process argument, but that he would be entitled to ultimately prevail only if he could establish that PIAA discriminated against him in a capricious or arbitrary manner. PIAA maintains that Boyle has completely failed to establish any likelihood of establishing that it has acted either arbitrarily or capriciously in the present case. The trial court, however, found otherwise, and we agree.

PIAA is correct in its contention that Boyle does not have a property interest in playing interscholastic sports and that under *Harrisburg School District*, our power to interfere with decisions rendered by PIAA is strictly limited. However, we believe that this is one of those rare cases in which judicial intervention is warranted. We note that while such action is contrary to the general rule against judicial intervention, it is not unprecedented. For example, in *Pennsylvania Interscholastic Athletic Association, Inc. v. Geisinger*, 81 Pa.Cmwlth. 421, 474 A.2d 62 (1984), we upheld a preliminary injunction against PIAA, which enjoined PIAA from prohibiting the petitioning students from participating in interscholastic sports, where the Board of Control had denied a request for an exemption from PIAA's requirement that students not attend more than eight semesters of high school, but had failed to make a thorough investigation, in contravention of PIAA's own By-Laws, in reaching that decision. In that case, while recognizing the heavy burden which must be met under *Harrisburg School District* in order for the courts to overturn a decision rendered by PIAA, we emphasized the fact that a party seeking a preliminary injunction does not have to prove his or her case absolutely. We then concluded that although the ultimate resolution of the case, after a full hearing on the merits, might be different, there existed sufficient and reasonable grounds for the trial court to grant a preliminary injunction.

In its brief, PIAA suggests that *Geisinger* was wrongly decided, since its result is contrary to the principle of non-interference set

forth by the Supreme Court in *Harrisburg School District.* PIAA contends that *Geisinger* improperly limits the application of *Harrisburg School District* to cases involving permanent injunctions. PIAA further argues that the Supreme Court in *Harrisburg School District* did not limit its holding to permanent injunctions and in fact cited to cases involving preliminary injunctions in reaching its decision. PIAA thereby concludes that this Court erred when it distinguished the facts and the issue in *Geisinger* from those found in *Harrisburg School District* and that our decision in *Geisinger* should now be reversed.

We strongly disagree with PIAA's characterization of our decision in *Geisinger.* Although it is true that we distinguished *Geisinger* from *Harrisburg School District* on the grounds that the former case involved a preliminary injunction and the latter case did not, we neither ignored nor violated the standards established in *Harrisburg School District* when deciding *Geisinger. Harrisburg School District* is the benchmark for cases involving PIAA and establishes a clear legal standard for determining whether a valid cause of action exists in such cases. Nevertheless, and regardless of the subject matter, *Harrisburg School District* does not eviscerate the long established principles which govern our review of decisions granting preliminary injunctions. Instead, the standards enunciated in *Harrisburg School District* must be applied in conjunction with those principles governing the granting of preliminary injunctions. Therefore, rather than disavowing *Harrisburg School District,* our decision in *Geisinger* merely recognized that in the context of a preliminary injunction proceeding, a party never has the same burden of proof as in a permanent injunction proceeding.

If we were to adopt PIAA's position and overturn *Geisinger,* it is hard to determine what differences would still exist between a party's burden in a preliminary injunction hearing and a permanent injunction hearing in matters involving the PIAA. In fact, under PIAA's interpretation of *Harrisburg School District,* Boyle would in effect be required to fully establish his case at the preliminary injunction stage. Such a major change in the law was clearly not contemplated by the Supreme Court in *Harrisburg School District* and is directly contrary to the principles set forth in *Albee Homes, Fischer,* and numerous other preliminary injunction cases.

■ Furthermore, although seemingly acknowledging the fact that the courts retain some power to review decisions made by PIAA, PIAA's view of the judiciary's scope of review of its actions is so narrow that it is hard to imagine a situation in which PIAA would agree that judicial intervention was actually appropriate. In the present case, a coach at Boyle's school assaulted Boyle's father in an altercation which allegedly began over a disagreement concerning Boyle. Boyle subsequently transferred to Geibel for the next school year. Although unable to conclude that Boyle had transferred for an athletic purpose, it nonetheless found him ineligible to play basketball in the upcoming school year. Under PIAA's Section 15 Guidelines, a student athlete may be declared eligible if the principals from both schools involved in the transfer state that they do not believe the transfer was the result of recruiting or for an athletic purpose. However, since Boyle's former principal at Frazier was unable or unwilling to make such an assertion, PIAA refused him eligibility. In reaching this decision, PIAA discounted the significance of the incident between Boyle's father and Frazier's football coach. Also, while stressing the unwillingness of Frazier's principal to attest to the non-athletic purpose of the transfer, PIAA seemingly ignored the provision in its own Section 15 Guidelines which provide that the enumerated reasons to grant an exemption listed therein are only examples and do not constitute the sole grounds for conferring eligibility under Section 15.

Finally, PIAA implicitly found that Boyle's transfer was not the result of recruiting or otherwise for an athletic purpose. Since the avowed purpose of Article VI of PIAA's By-Laws is to prevent recruiting and transfers done for an athletic purpose, PIAA's requirement that Boyle additionally obtain a written statement from his former principal attesting

to this same fact would appear to constitute a redundant as well as an arbitrary obstacle to obtaining eligibility. We find it difficult to imagine a more compelling case for allowing eligibility under the Section 15 exception of Article VI than the one presently before us. If PIAA were correct in its contention that judicial intervention is unwarranted in this case, we are uncertain under what circumstances PIAA believes intervention would be appropriate.

■ Since Boyle does not have a property interest in playing interscholastic basketball, he clearly is not entitled to the protections of procedural due process. However, as PIAA itself concedes, Boyle is entitled to protection under the equal protection clause of the Fourteenth Amendment. In the present case, PIAA's rules and regulations must be reviewed under the "rational basis" standard, since Boyle is not the member of a suspect class nor is a fundamental right involved. *See Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981). Under this standard, there is a presumption that PIAA's rules and regulations are valid. *See United States Steel Corp. v. Workmen's Compensation Appeal Board (Mehalovich)*, 72 Pa.Cmwlth. 481, 457 A.2d 155 (1983). Furthermore, PIAA's rules and regulations, both on their face as well as in their application, "must be sustained [under the equal protection clause] unless [they are] patently arbitrary and bear[ ] no rational relationship to a legitimate governmental interest." *Id.* 457 A.2d at 157.

Despite Boyle's heavy burden, we cannot conclude that the trial judge erred by finding that PIAA's By–Laws were inconsistent with their avowed purpose and that PIAA's action against Boyle was arbitrary and capricious. As discussed above, the purpose of Article VI of PIAA's By–Laws is to prevent transfers which are the result of recruiting or for any athletic purpose. Yet, PIAA's By–Laws permit a student to be declared ineligible even when it has been established that the student transferred for some other reason. Furthermore, under the Section 15 Guidelines relied upon by PIAA, if a student's former principal will not state that the student did not transfer for athletic reasons, a student may be denied eligibility even where the other evidence clearly establishes that the transfer was for non-athletic reasons. In the present case, Frazier's principal had no personal knowledge of any violations by Boyle, but instead relied on "rumors" from unnamed sources *in the athletic department* suggesting that recruiting might have been involved. Although principles of due process do not strictly apply, any rule which permits decisions to be made based purely on rumors (palpably hearsay) is not only inherently unfair but arbitrary as well. Transferring Students such as Boyle are placed in an untenable position, since no matter how thoroughly they establish that they transferred for a non-athletic purpose, PIAA may still deny them eligibility based on the arbitrary and unsubstantiated opinions of others when even their former principals have found no such purpose.

In the present case, we cannot overlook the fact that the principal of Frazier based his opinion largely on information obtained from unnamed members of the school's athletic department. Although we do not know the exact source of this information, it is hard to believe that Frazier's football coach, the individual accused of assaulting Boyle's father, did not directly participate in, or at least indirectly influence, the opinion of Frazier's "athletic department." The incident between Boyle's father and the football coach, of course, also supports Boyle's position that he transferred for a non-athletic purpose. Unfortunately, from a public relations standpoint, if nothing else, it is in the interest of Frazier to downplay and minimize the significance of the assault of the father of a student by one of its employees. This fact underscores the apparent conflict between the interests of Frazier's principal and Boyle as well as the prejudicial effect which the PIAA's reliance on the principal's letter had in the present matter. Furthermore, it was the *principal's* assessment of the facts and *his* opinion which PIAA's Section 15 Guidelines called for, not the assessment and opinion of its athletic department, one of whose members had assaulted the father of the subject student in a bar room brawl.

Based on the reasons enumerated above, we cannot agree with PIAA's argument that

the court of common pleas erred in finding that Boyle had a valid cause of action against PIAA or that PIAA had "arbitrarily and capriciously discriminated against [Boyle]." (Trial Court Opinion at 9.) Accordingly, having addressed all of the material questions raised by PIAA in its appeal, we affirm the decision of the court of common pleas granting Boyle a preliminary injunction.[7]

### ORDER

NOW, March 22, 1996, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby affirmed.

FRIEDMAN, J., concurs in the result only.

---

**7.** We again note that PIAA is correct in its argument that Boyle does not have a property interest in playing interscholastic sports and that he, therefore, was not denied procedural due process. However, this argument is irrelevant to our disposition, since the court of common pleas properly ruled in favor of Boyle on equal protection grounds. We also find it unnecessary to address the question of whether Boyle's free exercise rights under the First Amendment were violated when he was denied full participation in all of Geibel's scholastic programs.