**Hacker v. Colonial League**

C.P. of Lehigh County, no. 2001-E-0050.

*John P. Karoly Jr.,* for plaintiffs.

*Leonard N. Zito* and *Anthony J. Martino,* for defendant Colonial League.

*Robert T. Sonnenberg,* for defendants Wilson and Piperato, representing Palisades School District.

*Steven R. Serfass,* for defendants Egan and D.G. Smith, representing Palmerton School District.

*Kevin C. Reid,* for defendants J.C. Smith and Repsher, representing Pen Argyl School District; Knauer and Deeb, representing Salisbury School District; Nemes and Fanelli, representing Northwestern Lehigh School District; and Bartosh and Arnts, representing Wilson Area School District.

*Marc S. Fisher,* for defendants Dietrich and Sheriff, representing Saucon Valley School District.

*Edmund J. Healy,* for defendants Gessner and Rissmiller, representing Northern Lehigh School District.

GARDNER, *Chancellor,* October 11, 2001—This matter is before the court on the plaintiffs' petition for preliminary injunction in the nature of a request for a special injunction filed October 4, 2001 by petitioners.[1] Defendant's answer to petition for preliminary injunction was filed October 10, 2001 on behalf of defendant Colonial League.[2] Oral argument on the request for a special injunction[3] was held before the undersigned on October 10, 2001. For the reasons expressed below, we grant a special injunction.

This dispute involves an alleged violation of the Sunshine Act [4] by the Colonial League[5] in adopting certain

---

1. Petitioners in this action are students of various high schools in the Colonial League who are cheerleaders for their respective schools brought by and through their parents and natural guardians. There are 121 named parents or natural guardians on behalf of 93 named cheerleaders listed as plaintiffs in the complaint which is attached to the petition for preliminary injunction.

2. In addition to the Colonial League, there are also 16 other named defendants who are the present or former athletic directors and high school principals from the Palisades, Palmerton, Pen Argyl, Salisbury, Saucon Valley, Northern Lehigh, Northwestern Lehigh and Wilson Area School Districts. The named individuals in this matter are sued individually and as members of defendant Colonial League. The individual school districts are not named as defendants in this case. The only party to file an answer and brief in opposition to the petition for preliminary injunction was defendant Colonial League.

3. Plaintiffs' counsel originally presented his petition on October 4, 2001 as an emergency ex parte request for a five-day special injunction. The undersigned listed the matter for argument on October 10, 2001 and directed plaintiffs' counsel to give notice to all defendants, which he did.

4. 65 Pa.C.S. §§701-716.

5. The Colonial League is an unincorporated association which refers to itself as a "cooperative union" of 12 Pennsylvania Interscholastic Athletic Association schools. The members of the league are

new regulations concerning what types of activities cheerleaders at member schools can and cannot perform at athletic contests.[6] Petitioners contend that these new regulations were instituted at closed-door meetings of the league conducted on May 11, August 16 and September 7, 2001. Defendants do not dispute that the meetings were not open to the public.

At the original meeting on May 11, 2001, the league adopted the new regulations by a vote of nine to three. Subsequently, the league took a new vote and the regulations were again adopted, but this time by a vote of eight to four.[7] For the reasons expressed below, we grant the petition and temporarily enjoin defendants from enforcing the regulations set forth in paragraph 12 of "Colonial League cheerleading."

Defendants contest the grant of an injunction on numerous grounds, some of which were set forth in the answer and brief of the league, and others that were articulated by counsel for other defendants at oral argument conducted on October 11, 2001. We address defendants' arguments as follows.

---

Bangor, Catasauqua, Northern Lehigh, Northwestern Lehigh, Notre Dame, Palisades, Palmerton, Pen Argyl, Salisbury, Saucon Valley, Southern Lehigh and Wilson Area.

6. The provision that petitioners complain of is contained in paragraph 12 of "Colonial League cheerleading." Paragraph 12 states: "Cheerleaders will not be permitted to perform pyramids/mounts, stunts, any type of rolling/tumbling, etc. on any surface."

7. At oral argument, counsel for defendants represented that a subsequent vote was taken on September 16, 2001, at which time the representatives from Notre Dame changed their vote from favoring the new regulations to opposing the new regulations.

## VENUE

Defendants contend that venue is not proper in the Court of Common Pleas for Lehigh County. Pennsylvania Rule of Civil Procedure 2156 sets forth the standard for proper venue when dealing with an unincorporated association such as defendant league. Rule 2156 states in pertinent part:

"(a) Except as otherwise provided by subdivision (b) of this rule, an action against an association may be brought in and only in a county where the association regularly conducts business or any association activity, or in the county where the cause of action arose or in a county where a transaction or occurrence took place out of which the cause of action arose."

In this case, defendants contend that all of the meetings that were held on the issue of limiting the activities of cheerleaders were conducted at locations outside of Lehigh County. Defendants assert that the Colonial League has no specific league office. Defendants further assert that the league normally conducts its meetings at either the office of the league president Al Wilson at Palisades High School or at some mutually convenient location, usually in Northampton County, Pennsylvania.

Defendants contend that because all the meetings which involve this issue took place outside of Lehigh County, Pennsylvania, venue in Lehigh County is improper. We disagree.

Rule 2156(a) also provides that venue is proper "in a county where the association regularly conducts business or any association activity . . . ." Defendant league

is an interscholastic athletics league. It conducts athletic contests at all of the member schools, including those member schools located in Lehigh County. We find that the holding of "league" games or events constitutes the conduct of an association activity in Lehigh County for purposes of establishing proper venue. Accordingly, we find that venue in this dispute is proper in Lehigh County.

## JURISDICTION

Defendants contend that this court does not have jurisdiction to hear this matter for a number of reasons. First, defendants contend that there is no subject matter jurisdiction as petitioners fail to set forth a cause of action pursuant to the Sunshine Act.

Defendants contend that they are not an agency of the Commonwealth, thus, are not subject to the open meeting provisions of the Sunshine Act. Pursuant to 65 Pa.C.S. §703 an "agency" is defined as:

"The body, and all committees thereof authorized by the body to take official action or render advice on matters of agency business, of all of the following: the General Assembly, the executive branch of government of this Commonwealth, including the governor's cabinet when meeting on official policymaking business, any board, council, authority or commission of the Commonwealth or of any political subdivision of the Commonwealth or any state, municipal, township or school authority, school board, school governing body, commission, the boards of trustees of all state-aided colleges and universities, the councils of trustees of all state-owned colleges and universities, the boards of trustees

of all state-related universities and all community colleges or similar organizations created by or pursuant to a statute which declares in substance that the organization performs or has for its purpose the performance of an essential governmental function and through the joint action of its members exercises governmental authority and takes official action. The term does not include a caucus or a meeting of an ethics committee created under the rules of the Senate or House of Representatives."

Defendant League contends that it is not an "agency" pursuant to the definition set forth above. It contends that it is an unincorporated association created to facilitate the development of athletics as it reflects positively upon the schools and their educational programs. It further contends that the objective of the Colonial League is to represent interscholastic athletics to the public in a climate which promotes sportsmanship, competitive play and academic achievement.

The league promulgates rules and regulations for athletes and teams concerning interscholastic athletic contests in conjunction with those promulgated by the Pennsylvania Interscholastic Athletic Association (PIAA). The Colonial League contends that it does not recognize cheerleading as a sport, however, it does recognize that it is an activity which supports and enhances interscholastic athletic contests.

Pursuant to 24 P.S. §5-511[8] it is the school board in each school district that is empowered by the legislature

---

8. Act of June 29, 1984, P.L. 438, no. 93 §1, as amended, 24 P.S. §5-511.

to adopt and enforce rules and regulations regarding school activities. Section 5-511 provides in pertinent part:

"(a) The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control, or prohibition of exercises, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other activities related to the school program, including raising and disbursing funds for any and all of such purposes and for scholarships, and (2) the organization, management, supervision, control, financing, or prohibition of organizations, clubs, societies and groups of the members of any class or school, and may provide for the suspension, dismissal, or other reasonable penalty in the case of any appointee, professional or other employe,[9] or pupil who violates any of such rules or regulations.

"(b) Any school or any class activity or organization thereof, with the approval of the board, may affiliate with any local, district, regional, state, or national organization whose purposes and activities are appropriate to and related to the school program."

In this case, plaintiffs are likely to be able to establish at a final injunction hearing that the league is prescribing, adopting and seeking enforcement from its member schools of certain rules and regulations concerning interscholastic athletics between league members, including the regulations concerning the activities of cheerleaders which is the subject of this matter. In that role,

---

9. Enrolled bill reads "employee."

the league would be acting as a de facto school board. See *Patriot-News Co. v. Empowerment Team,* 763 A.2d 539, 546 (Pa. Commw. 2000).

In this case, the league has adopted regulations on the activities that cheerleaders can perform at athletic contests. In doing so, the league is acting as an arm of the school boards of the member schools. The legislature has authorized the individual school boards to promulgate such rules and regulations. The respective school boards have empowered the league to make such determinations in the realm of interscholastic athletics.

Because the parties agree that if it were a school board that promulgated the disputed regulations concerning the activities of cheerleaders, it would be subject to the Sunshine Act because school boards are specifically identified as included in the definition of an agency. Moreover, the definition includes "the body, and all committees thereof authorized by the body to take official action . . . ." In this case, the school boards have authorized the league to formulate certain rules and regulations. While the league is not an actual committee of the school boards, as stated above, it would be acting as a de facto school board in this context.

If the league were the de facto school board for these purposes, it would be subject to the requirements of the Sunshine Act the same as if it were the school board. Accordingly, we conclude that plaintiffs will be likely to establish that the league falls within the definition of agency as set forth in 65 Pa.C.S. §703.

The Commonwealth Court of Pennsylvania has original jurisdiction over actions involving state agencies and

"the courts of common pleas shall have original jurisdiction of actions involving other agencies to render declaratory judgments or to enforce this chapter by injunction or other remedy deemed appropriate by the court." 65 Pa.C.S. §715. Therefore, because plaintiff is likely to establish that defendant league falls within the definition of agency, and pursuant to section 715 of the Sunshine Act, this court does have subject matter jurisdiction.

Defendants contend that even if we find that subject matter jurisdiction and venue lie with this court, we should not entertain this dispute. Defendants assert that the Pennsylvania Supreme Court has pronounced a general rule that the judiciary will not interfere with affairs of high school athletic associations unless the action complained of is fraudulent, an invasion of property or pecuniary rights or constitutes capricious or arbitrary discrimination. *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association,* 453 Pa. 495, 503, 309 A.2d 353, 357 (1973). While we agree to the general proposition advanced by defendants, we disagree that we are precluded from ruling in this matter.

As noted by the Commonwealth Court of Pennsylvania in *Boyle v. Pennsylvania Interscholastic Athletic Association Inc.,* 676 A.2d 695 (Pa. Commw. 1996), there is a difference between a court granting a preliminary injunction as opposed to a permanent injunction. A party seeking a preliminary injunction does not have to prove his or her case absolutely as is necessary for the imposition of a final injunction. If a party did have to absolutely prove his or her case, there would be no difference between the two types of injunctions and a party could

never obtain a preliminary injunction against an athletic association. Accordingly, because what petitioners seek is a preliminary injunction in the nature of a special injunction, and because plaintiffs will likely be able to establish that the league violated the Sunshine Act in promulgating the regulations at issue, we conclude that this is the proper case where judicial intervention is warranted.

In this case, defendants concede that they did not conduct an open meeting pursuant to the Sunshine Act. Defendants further contend that because the Colonial League is not an agency, it is not required to do so. Plaintiffs contend that the league is required to conform with the policies governing the conduct of open meetings that are required by the Sunshine Act pursuant to 24 P.S. §16-1604-A.[10] Section 16-1604-A, also known as Act 91, provides at (b)(1) that the PIAA shall take all steps necessary to adopt and adhere to policies governing the conduct of open meetings that conform to the requirements of the Sunshine Act. Petitioners contend that Act 91 also applies to the Colonial League, thus, the league must conduct all of its meetings in conformity with the Sunshine Act.

Defendant league contends that it is not the PIAA, and does not fall within the ambit of Act 91. It further contends that it does not have to comply with the Sunshine Act because it is not an agency for purposes of the Sunshine Act. While we agree with defendant that it does

---

10. Act of November 22, 2000, P.L. 672, no. 91 §5, as amended, 24 P.S. §16-1604-A.

not have to comply with the Sunshine Act in all of its meetings, we conclude as noted above, that when the league acts in the role of de facto school board, it does come under the definition of an agency and must conform to the requirements of the Sunshine Act.

## PRELIMINARY INJUNCTION

Next we address the merits of petitioners' request for a special injunction. Both parties contend that the test when reviewing a petition for preliminary injunction is enunciated by the Commonwealth Court in *Patriot-News* as follows: "(1) the preliminary injunction must be necessary to prevent immediate and irreparable harm which could not be compensated for by damages; (2) greater injury would result from the denial of the preliminary injunction than from the granting of it; and (3) it would operate to restore the parties to the status quo as it existed prior to the alleged wrongful conduct. In addition to meeting all three criteria, the court must be convinced that plaintiffs' right to a preliminary injunction is clear . . . the general jurisdiction must be warranted." 763 A.2d at 546-47.

Here, we find that there is no question that the entry of a special injunction is necessary to prevent irreparable harm because, as in *Patriot-News,* the meetings of the league were closed. To the extent that the meetings were closed, the public and the petitioner cheerleaders in particular were harmed by the denial of the opportunity to witness the decisions made by the league. They were also unable to comment on or supply evidence opposing

the enactment of these new regulations concerning the activities that they could perform at athletic events.

Petitioners contend that the new restrictions "cut the heart out" of the activity of cheerleading and that the actions of the league are arbitrary, capricious and not based on any empirical evidence to support the decision. Moreover, they contend that cheerleaders who are high school seniors will never again get the opportunity to exhibit their skills and talents as they could prior to the league's alleged illegal adoption of the new regulations.

We do not decide whether participation in cheerleading is a legally protected right, as asserted by plaintiffs, or a privilege, as asserted by defendant. That decision is more appropriately deferred to a hearing on a preliminary or final injunction. However, if cheerleading is a legally protected right, loss of the opportunity to cheer cannot be compensated for by money damages. Moreover, no price tag can be put on the loss of the public's evaluation of the league's decision-making process.

We conclude that greater harm would result in not granting the requested relief than to grant the requested injunction. There is no harm to the league because it can properly give notice of a public meeting to reevaluate its previous decision and give the public not only notice of the meeting and an opportunity to attend, but also to provide the public the opportunity to let the league members hear what their concerns are with regard to these regulations.

Moreover, the public's interest in obtaining the information denied to it by the league conducting its meeting behind closed doors is supported by the actions of the

Pennsylvania Legislature regarding the PIAA. While we conclude that Act 91 does not mandate that the league hold all of its meetings in conformity with the Sunshine Act, we find it instructive that the legislature has now required that the PIAA conform its conduct to the Sunshine Act. This comports with the general ideal that meetings of agencies covered by the Sunshine Act should be held in the public light.

We also conclude that the third prong of the test will be satisfied because granting a special injunction will restore the parties to the status quo prior to the enactment of the new regulations concerning the activities of cheerleaders at athletic contests.

Because defendants admit that they conducted the meetings on the issue of cheerleader activities behind closed doors, and because plaintiffs are likely to be able to establish this to be a violation of the Sunshine Act, we conclude that petitioners have a clear right to temporary injunctive relief.

Finally, we address defendants' contention that petitioners are barred from seeking relief because they had to bring a legal challenge to the league's meeting in violation of the Sunshine Act within 30 days from the discovery of any action that occurred at a meeting that was not open pursuant to section 713 of the Sunshine Act. For the following reasons we find that petitioners did bring their legal challenge in a timely manner.

Section 713 of the Sunshine Act states:

"A legal challenge under this chapter shall be filed within 30 days from the date of a meeting which is open, or within 30 days from the discovery of any action that

occurred at a meeting which was not open at which this chapter was violated, provided that, in the case of a meeting which was not open, no legal challenge may be commenced more than one year from the date of said meeting. The court may enjoin any challenged action until a judicial determination of the legality of the meeting at which the action was adopted is reached. Should the court determine that the meeting did not meet the requirements of this chapter, it may in its discretion find that any or all official action taken at the meeting shall be invalid. Should the court determine that the meeting met the requirements of this chapter, all official action taken at the meeting shall be fully effective." 65 Pa.C.S. §713.

First, we note that counsel for the Northern Lehigh defendants admitted that on September 16, 2001 Notre Dame changed its vote on this issue and made it 8-4 in favor of the new regulations. Previously, the vote was 9-3 in favor. This action was commenced by the filing of a complaint on October 4, 2001. Accordingly, the action was commenced within 30 days of the new vote, and less than one year from the date of the initial meeting of the league on May 11, 2001.

Accordingly, for all the foregoing reasons we grant the petition for preliminary injunction in the nature of a request for a special injunction. Pursuant to Pa.R.C.P. 1531(b)(1) the special injunction shall be effective upon the posting of a bond by plaintiffs in the amount of $2,500.

Pursuant to Pa.R.C.P. 1531(d) an injunction granted without notice to defendants shall be deemed dissolved unless a hearing on the continuance of the injunction is

held within five days after the granting of the injunction. Here, as noted above, the special injunction was granted with notice to all defendants after oral argument in which all defendants participated through counsel. Accordingly, upon posting of the bond, the special injunction shall remain in effect until a hearing on the preliminary injunction is held or until further court order.

## DECREE

Now, October 11, 2001, upon consideration of plaintiffs' petition for preliminary injunction in the nature of a request for a special injunction filed October 4, 2001; upon consideration of defendant's answer to petition for preliminary injunction filed October 10, 2001 by defendant Colonial League; upon consideration of the briefs of the parties; after oral argument held before the undersigned on October 9, 2001; and for the reasons expressed in the accompanying adjudication, it is ordered and decreed that plaintiffs' request for a special injunction is granted.

It is further ordered and decreed that defendants are enjoined from enforcing paragraph 12 of the Colonial League cheerleading regulations enacted at meetings held May 11, August 16, and September 7 and 16, 2001.

It is further ordered and decreed that the within special injunction shall become effective upon the filing by plaintiffs with the clerk of courts—civil division of a bond in the amount of $2,500 complying with all requirements of Pa.R.C.P. 1531(b)(1), or by the deposit of $2,500 cash in accordance with Pa.R.C.P. 1531(b)(2).

It is further ordered and decreed that a hearing on plaintiffs' petition for preliminary injunction shall be held on November 26, 2001, at 9:30, courtroom no. 2, Lehigh County Courthouse, or at such later time as the schedule of the court permits.