# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Simon Campbell, | : | |
|           Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Interscholastic | : | |
| Athletic Association (Office of | : | |
| Open Records), | : | No. 25 C.D. 2021 |
|           Respondent | : | |
| | | |
| Pennsylvania Interscholastic Athletic | : | |
| Association, Inc., | : | |
|           Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Simon Campbell (Office of | : | No. 107 C.D. 2021 |
| Open Records), | : | No. 170 C.D. 2021 |
|           Respondent | : | Argued:  September 22, 2021 |

BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**                      **FILED:  November 30, 2021**

Before the Court are consolidated petitions for review from Simon Campbell (Requester) and the Pennsylvania Interscholastic Athletic Association (PIAA). Requester petitions this Court for review of the Office of Open Records' (OOR) January 13, 2021 Final Determination denying production of the records requested

in Item 7 of his November 2, 2020 request (Request) and asks that this Court make a finding of bad faith as to PIAA's conduct in this matter, impose a civil penalty of $1,500.00 upon PIAA, and award him costs and attorney fees. PIAA petitions this Court for review of the OOR's Final Determination and the OOR's February 5, 2021 denial of its Petition for Reconsideration.

There are six issues before this Court: (1) whether the OOR erred by finding that PIAA is subject to the Right-to-Know Law (RTKL)[1] and whether its classificaiton as a "state-affiliated entity" under the RTKL constitutes special legislation and violates its equal protection rights; (2) whether the OOR violated PIAA's due process rights by commingling functions; (3) whether the OOR erred by permitting the RTKL's record access provisions to supersede those of the Nonprofit Corporation Law of 1988 (Nonprofit Law);[2] (4) whether the OOR erred by granting unredacted access to PIAA's legal invoices and by not providing PIAA additional time to provide a significant volume of documents requiring redaction; (5) whether PIAA failed to conduct a good faith search and, therefore, acted with the requisite bad faith to support an award of statutory penalties and attorney fees; and (6) whether PIAA failed to prove that it did not have possession, custody, or control of any records responsive to Request Item 7.[3]

## I.   BACKGROUND

### A.   *The Request and PIAA's Response*

On November 2, 2020, Requester filed the Request seeking:

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] 15 Pa.C.S. §§ 5101-6162.

[3] PIAA's appeal from the OOR's Final Determination and the OOR's denial of its Petition for Reconsideration will be addressed first since the issues therein may be dipositive of this matter. We have reorganized some of the issues for ease of discussion.

2

[] 1 . . . [E]lectronic copies of all legal invoices that **already exist in electronic form** that were paid by PIAA to any and all attorneys/law firms between the dates of January 1, 2012[,] and the present. . . .

[] 2 . . . [E]lectronic copies of the fronts of all electronic cleared check images that **already exist in electronic form** . . . for all financial accounts owned/operated by PIAA between the dates of June 1, 2019[,] and the present. . . .

[] 3 . . . [E]lectronic copies of all monthly bank (or other financial institution) statements that **already exist in electronic form** for all financial accounts owned/operated by PIAA between the dates of December 1, 2013[,] and the present. . . .

[] 4 . . . [A]ll posted line[-]item transactions in all bank (or other financial institution) accounts that **already exist in electronic form** for all financial accounts owned/operated by PIAA between the dates of June 1, 2019[,] and the present. . . .

[] 5 . . . PIAA's most recent three (3) years of independent audited financial statements that **already exist in electronic form**. . . .

[] 6 . . . PIAA's most recent Form 990 filing with the [Internal Revenue Service (]IRS[]()] that **already exists in electronic form**. . . .

[] 7 . . . [E]lectronic copies of all written communications that **already exist in electronic form**, and that were exchanged between PIAA officials (and between PIAA officials and counsel) between the dates of January 1, 2020[,] and the present[] that discuss the topic of PIAA being improperly included in the RTKL. . . .

[] 8 . . . [A] screenshot image showing [Requester] the name of the software program/s in PIAA's possession, custody or control that can perform electronic redactions on PDF files and/or other electronic file types. . . .

(Reproduced Record (R.R.) at 7a-13a (emphasis in original) (footnotes omitted).)

On November 6, 2020, PIAA invoked a 30-day extension of time to respond to the Request. (*Id.* at 5a.) On December 7, 2020, PIAA partially denied the Request, asserting that records responsive to Items 1, 2, 3, 4, 7 and 8 do not exist. (*Id.* at 3a-4a.) PIAA responded that it requested records responsive to Item 5 from its auditors and had not yet received them, but they would be produced upon receipt.

3

(*Id.* at 4a.)  In response to Item 6 of the Request, PIAA directed Requester to the IRS's publicly available website.  (*Id.*)  PIAA also noted a general objection to the Request, stating that PIAA is not a Commonwealth of Pennsylvania (Commonwealth) authority or entity subject to the RTKL and that it intended to litigate that issue.  (*Id.* at 3a.)

### B.	Proceedings Before the OOR and Appeals to This Court

On December 10, 2020, Requester appealed to the OOR, challenging PIAA's denial and stating grounds for disclosure of the requested records.  (*Id.* at 1a-2a.)  The OOR invited both parties to supplement the record.  On December 21, 2020, PIAA filed a Motion to Stay Proceedings (Motion), asserting that the instant appeal should be stayed pending this Court's consideration of PIAA's Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief, which it filed with this Court on December 18, 2020.[4]  (*Id.* at 26a-81a.)  That same day, the OOR afforded Requester the opportunity to respond to PIAA's Motion.  (*Id.* at 19a.)  On December 22, 2020, Requester objected to the Motion, and the OOR denied the Motion and set forth deadlines for the parties to submit evidence relative to the appeal.  (*Id.* at 82a-99a.)

On December 30, 2020, PIAA submitted a position statement reiterating its grounds for denial.  (*Id.* at 106a-32a.)  PIAA reasserted that it is not subject to the RTKL and added that the RTKL's application to PIAA constitutes unconstitutional special legislation.  (*Id.* at 110a-22a.)  PIAA further argued that the RTKL violates

---

[4] *See Pa. Interscholastic Athletic Ass'n, Inc. v. Commonwealth* (Pa. Cmwlth., No. 661 M.D. 2020) (wherein PIAA is requesting that this Court declare that PIAA is not subject to the RTKL).

4

PIAA's equal protection rights under the United States[5] and Pennsylvania[6] Constitutions and that disclosure of certain banking information would violate its privacy rights. (*Id.* at 122a-32a.) In addition, PIAA submitted an affidavit, made under penalty of perjury, from PIAA's Executive Director and Open Records Officer Dr. Robert Lombardi (Dr. Lombardi). (*Id.* at 134a-41a.) Dr. Lombardi stated, in relevant part:

> 30. Request [Item] 7 . . . sought copies of all written communications between PIAA officials, including legal counsel between January 1, 2020[,] and the date of [Requester's] submission that discuss the topic of PIAA being improperly included in the RTKL.

[5] Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

[6] The equal protection provision found in article III, section 32 of the Pennsylvania Constitution, also known as the special legislation provision, provides:

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>
> > 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts[;]
> > 2. Vacating roads, town plats, streets or alleys[;]
> > 3. Locating or changing county seats, erecting new counties or changing county lines[;]
> > 4. Erecting new townships or boroughs, changing township lines, borough limits or school districts[;]
> > 5. Remitting fines, penalties and forfeitures, or refunding moneys legally paid into the treasury[;]
> > 6. Exempting property from taxation[;]
> > 7. Regulating labor, trade, mining or manufacturing[;]
> > 8. Creating corporations, or amending, renewing or extending the charters thereof[.]
>
> Nor shall the General Assembly indirectly enact any special or local law by the partial repeal of a general law; but laws repealing local or special acts may be passed.

PA. CONST. art. III, § 32.

31.  I conducted a thorough search of all PIAA records relating to that topic and found no responsive records.

32.  I am also aware that any communications on that subject would be limited to me and legal counsel as no other PIAA official was involved in 2020 in discussion of that issue as of the date of the [R]equest.

33.  I am also aware that all communications between me and legal counsel on that topic in 2020 were oral.  There were no 2020 written communications on that subject prior to submission of the [R]equest.

. . . .

40.  PIAA has no responsive records in an electronic format.

41.  PIAA receives its legal invoices in a paper format.

42.  I have requested electronic records from law firms which [PIAA has] used but have not received them.

43.  There are several thousand pages of such invoices.

44.  Once the records arrive, they will need to be redacted.

45.  It will take weeks to do so since none of those documents are [] currently in a redacted format and must be created by PIAA.

46.  [PIAA's] standard redaction process involves going through entries on each printed invoice.

47.  I have recently undertaken this task with the same requested records pursuant to an earlier request by another individual for the same documents, so I know how long the effort will take.  However, those redacted records were destroyed once the requester informed PIAA that he would not pay for the costs of reproduction.  That destruction occurred prior to receiving [Requester's] request.  Consequently, I would need to replicate the process here.

(R.R. at 138a-39a.)

On December 31, 2020, Requester submitted a request to the OOR that the record remain open for an additional two or three business days.  (*Id.* at 142a.)  On the same day, PIAA submitted an assertion that, because the Requester did not

timely respond to any of the issues identified in the denial letter, argument on assertedly newly raised issues would be untimely and should not be permitted. (*Id.* at 144a.) Also, on December 31, 2020, Requester submitted a reply to PIAA's submission, stating, in part, that PIAA acted in bad faith. (*Id.* at 155a.) The OOR notified the parties that the record would remain open through January 5, 2021. (*Id.* at 157a.)

On January 4, 2021, Requester made a submission to the OOR, indicating that he was asking the Pennsylvania Office of Attorney General (OAG) to ensure the OAG set forth the Commonwealth's direct interest in this appeal, which Requester enclosed in a letter to the OAG. (*Id.* at 158a-65a.) On January 5, 2021, PIAA submitted a supplemental position statement, asserting, in part, that any Requester submission relating to responses presented in PIAA's December 7, 2020 letter should be rejected as untimely. (*Id.* at 167a-72a.) On the same day, Requester submitted a supplemental position statement, declaring, in part, that "[a]ny and all redaction arguments not raised [had] been waived" and seeking to have the OOR issue an advisory opinion finding that PIAA and its counsel acted in bad faith and in wanton disregard of the law. (*Id.* at 196a-98a, 201a-09a.)

On January 13, 2021, the OOR granted in part and denied in part Requester's appeal, determining that PIAA was subject to the RTKL but declining to make a finding of bad faith. (*Id.* at 244a-45a, 254a.) The OOR directed PIAA to provide responsive records as follows: to the extent the legal invoices existed in electronic format, they were subject to disclosure; Items 2, 3 and 4 of the Request that existed in electronic format were subject to disclosure, with PIAA's bank account numbers redacted; to the extent that PIAA's auditors had the records responsive to Item 5 in electronic format, they were subject to public access, absent PIAA providing a sufficient evidentiary basis that no responsive records exist; and, as to Item 8, the OOR would order disclosure of responsive public records within 30 days of the Final

7

Determination. (*Id.* at 245a-50a; 252a-53a.) As for Item 7, the OOR determined that PIAA demonstrated that the records requested did not exist. (*Id.* at 251a.)

On January 15, 2021, Requester petitioned for review of the OOR's Final Determination, claiming that the OOR should have ordered disclosure of Request Item 7 and that PIAA acted in bad faith in denying disclosure of the other withheld documents. On January 27, 2021, PIAA filed its Petition for Reconsideration, which the OOR denied on February 5, 2021. On March 4, 2021, PIAA filed a Petition for Review with this Court, maintaining that it is not subject to the RTKL. Also, that same day, PIAA filed a Petition for Review challenging the OOR's denial of its Petition for Reconsideration, alleging that the OOR's Chief Counsel violated PIAA's procedural due process rights by commingling functions in both filing Preliminary Objections to PIAA's Petition for Review in the original jurisdiction matter and denying PIAA's Petition for Reconsideration.[7]

---

[7] "This Court exercises plenary, *de novo* review of [the] OOR's [Final D]etermination in this matter." *UnitedHealthcare of Pa., Inc. v. Pa. Dep't of Hum. Servs.*, 187 A.3d 1046, 1052 n.6 (Pa. Cmwlth. 2018).

> The OOR has not promulgated any regulations regarding petitions for reconsideration. In general, however, an agency's "decision to grant or deny a request for reconsideration is a matter of administrative discretion and, as such, will only be reversed for an abuse of discretion." *Fleeher v. Dep*['*t*] *of Transp*[.]*, Bureau of Driver Licensing*, 850 A.2d 34, 36 (Pa. Cmwlth. 2004); *Muehleisen v. State Civ*[.] *Serv*[.] *Comm*['*n*], . . . 443 A.2d 867, 869 ([Pa. Cmwlth.] 1982).

*Pa. Tpk. Comm'n v. Elec. Transaction Consultants Corp.*, 230 A.3d 548, 560 (Pa. Cmwlth. 2020). Further, "[a] challenge to the constitutionality of legislation poses a question of law, and thus, our review is plenary and non-deferential." *Pa. Tpk. Comm'n v. Commonwealth*, 899 A.2d 1085, 1094 (Pa. 2006).

## II.   DISCUSSION

   A.   *Whether OOR erred in finding the PIAA is subject to the RTKL and whether its classification as a "state-affiliated entity" constitutes special legislation and violates equal protection.*

We start with the issues presented in PIAA's two appeals.  PIAA first contends that the OOR erred by finding that it is subject to the RTKL.  PIAA argues that, notwithstanding it being singled out within the RTKL as such, PIAA is not a **state-affiliated entity**.  PIAA maintains that it is neither a Commonwealth authority nor Commonwealth entity because PIAA:  (1) receives no Commonwealth funding or tax dollars; (2) has not been granted any powers by the Commonwealth; (3) is not administered or governed by any Commonwealth personnel; and (4) was not created by the General Assembly.  PIAA asserts that it is no different than a myriad of other private nonprofit corporations in Pennsylvania with similar members, powers, and responsibilities.

Moreover, even if PIAA is a "state-affiliated entity," PIAA claims that its inclusion within the RTKL as such, when it does not meet the definition established for the class in which it is allegedly included, is unconstitutional special legislation and violates PIAA's equal protection rights.  PIAA declares that its inclusion in the RTKL as a state-affiliated entity bears no rational relationship to the purpose of the law and improperly discriminates against PIAA.

Requester rejoins that PIAA's constitutional claims fail because there is a rational basis to include PIAA in the RTKL.  Requester retorts that PIAA performs state action by regulating high school athletics statewide, is largely funded by Commonwealth public school districts, and wields tremendous power over the lives of Commonwealth student athletes.  Thus, Requester maintains that there is a substantial public interest in the transparency of PIAA's use of public funds.

Preliminarily, "[t]he answer to these arguments, of course, is that [PIAA] is an agency if the General Assembly says it is.  It is axiomatic that[,] within

9

constitutional limits, the General Assembly is empowered to pass legislation[ and] define the terms of its legislation . . . as it sees fit[.]" *Harristown Dev. Corp. v. Dep't of Gen. Servs.*, 614 A.2d 1128, 1131 (Pa. 1992). It is undisputed that the General Assembly included PIAA as a "state-affiliated entity" for purposes of the RTKL. *See* Section 102 of the RTKL, 65 P.S. § 67.102 ("A Commonwealth authority or Commonwealth entity. The term includes . . . the [PIAA.]").

Nonetheless, legislation specifically identifying a person or entity may violate the proscription on special laws found in article III, section 32 of the Pennsylvania Constitution. *Pa. Tpk. Comm'n v. Commonwealth*, 899 A.2d 1085, 1094 (Pa. 2006); *Harrisburg Sch. Dist. v. Zogby*, 828 A.2d 1079, 1088 (Pa. 2003). "[T]he citizens of Pennsylvania chose to include within the Constitution of 1874 a proscription on special laws for the very simple and understandable purpose-to put an end to the flood of privileged legislation for particular localities and for private purposes" and "to end the practice of favoritism." *Zogby*, 828 A.2d at 1088 (quotations omitted). Our Supreme Court explained that, "[o]ver the years, the underlying purpose of [a]rticle III, [s]ection 32 has been recognized to be analagous to the federal principles of equal protection under the law . . . , and thus, special legislation claims and equal protection claims have been reviewed under the same jurisprudential rubric." *Pa. Tpk. Comm'n*, 899 A.2d at 1094 (citing *Zogby*, 828 A.2d at 1088). "The common constitutional principle at the heart of the special legislation proscription and the equal protection clause is that like persons in like circumstances should be treated similarly by the sovereign." *Id.* (citations omitted).

Even so, "[e]qual protection principles do not, however, vitiate the Legislature's power to classify, which necessarily flows from its general power to enact regulations for the health, safety, and welfare of the community." *Zogby*, 828 A.2d at 1088 (citation omitted). "Nor do they prohibit differential treatment of persons [or organizations] having different needs . . . , provided the classifications

10

at issue bear a reasonable relationship to a legitimate state purpose"—*i.e.* the rational-basis inquiry. *Id.* (citation omitted). Our Supreme Court has described the rational-basis inquiry as follows:

> The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, **provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation**. In other words, a classification must rest upon some ground of difference, which justifies the classification and has a fair and substantial relationship to the object of the legislation.

*Curtis v. Kline*, 666 A.2d 265, 268 (Pa. 1995) (citations omitted) (emphasis added). In pursuing this analysis, we remain cognizant that a duly enacted statute is presumed valid and will not be declared unconstitutional unless it "clearly, palpably[,] and plainly violates the Constitution." *Purple Orchid, Inc. v. Pa. State Police*, 813 A.2d 801, 805 (Pa. 2002). In seeking to overcome this presumption of validity, the challenging party bears a heavy burden of persuasion. *Dep't of Transp. v. McCafferty*, 758 A.2d 1155, 1160 (Pa. 2000).

In *Harristown*, a nonprofit corporation that served as "the largest lessor of space to the Commonwealth" and received $13 million of revenue in 1 year from the Commonwealth, brought suit after the enactment of an amendment to The Administrative Code of 1929[8] that categorized nonprofit corporations which leased land to the Commonwealth as state agencies for the purpose of the RTKL. *Harristown*, 614 A.2d at 1130. In considering the nonprofit corporation's argument that its classification as an agency constituted unconstitutional special legislation and violated equal protection, our Supreme Court stated:

> Plainly, there is a rational basis for the classification.[] Because Harristown is the largest supplier of rented space to the Commonwealth, and because the viability of state government depends

---

[8]Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §§ 51-732.

11

upon assurance that it will continue to be able to have space for its various departments and agencies, the Commonwealth needs to be able to monitor the soundness of Harristown's business operations and to avoid impending difficulty which may threaten Harristown's continued operation and ability to provide rental space for government operations.

*Id.* at 1132 (footnote omitted).

In the case *sub judice*, PIAA contends that it is a nonprofit corporation with no funding from, control over, or affiliation with the Commonwealth. Requester, however, points to PIAA's website as evidence that it is not. According to PIAA's website,

> [t]he membership of PIAA consists of 1,431 schools, of which 583 are senior high schools and 594 are junior high/middle schools. Of that membership, 40 are [c]harter senior high [s]chools, 144 are [p]rivate senior high [s]chools, 17 are [c]harter junior high/middle schools, and 53 are [p]rivate junior high/middle [s]chools.[9] More than 350,000 students participate in interscholastic athletics at all levels (varsity, junior varsity, or otherwise) of competition under PIAA jurisdiction, which placed Pennsylvania sixth among the states for 2017-2018. Similar associations exist in all 50 states.
> 
> . . . .
> 
> **[M]embers of [PIAA's] Board of Directors include representatives of the member junior high/middle schools**, the **Pennsylvania School Boards Association** (PSBA), the Pennsylvania Association of School Administrators (PASA), the Pennsylvania Principals Association, the Pennsylvania State Athletic Directors Association (PSADA), the Pennsylvania Coaches' Association (PCA), the **Pennsylvania Department of Education** (PDE), one female and one male PIAA-registered sports' official, the chairpersons of the Girls' Athletics and Private Schools' Steering Committees, and one female and one male representative from the Parents' Advisory Committee. With the sometime exception of the officials' and parents' representatives, members of the Board of Directors are experienced professional educators who have background and experience in dealing with high school athletics.

---

[9] The remaining 1,234 schools (roughly 86% of PIAA's membership) are public or charter schools.

PIAA About Our Story, https://www.piaa.org/about/story.aspx (last visited Nov. 29, 2021) (emphasis added).

Further, PIAA was formed by a group of high school principals to "eliminate abuses, establish uniform rules, and place interscholastic athletics in the overall context of secondary education." *Id.* PIAA establishes and enforces rules governing the eligibility of high school athletes to participate in interscholastic athletics, including rules for academic performance and attendance; adopts rules for each sport under its jurisdiction; provides training opportunities for public high school educators to officiate at contests in which public high schools participate; and organizes and operates Inter-District Championship Contests, in which public high schools compete. *See id.*; (*see* Requester's Second Brief (Br.) at 10 n.2). Accordingly, PIAA is the *de facto* statewide regulator of high school athletics across the Commonwealth.

Moreover, our Supreme Court has declared that PIAA's affairs constitute state action "in the constitutional sense" for the purpose of due process. *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 356-57 (Pa. 1973). The Court explained:

> [A]ffairs of the PIAA constitute state action. [PIAA] is composed of all the public high schools in this Commonwealth except those in Philadelphia. [] PIAA is funded by the payment of membership fees from public school moneys, and so ultimately by the Commonwealth's taxpayers, and from the gate receipts of athletic events between public high schools.

*Id.* at 357.

Therefore, as PIAA undertakes state action and is funded primarily by public school districts, *id.*, the General Assembly's classification of PIAA as a "state-affiliated entity" for the purpose of qualifying as an agency under the RTKL has a rational basis and furthers a legitimate state interest of transparency in PIAA's use

13

of public funds in a manner that dramatically impacts students' lives.  Just as the nonprofit corporation's status in *Harristown* as the largest supplier of rented space to the Commonwealth was sufficient under the rational-basis inquiry for the corporation to be subject to the RTKL, PIAA's statewide control over high school athletics and the connection between the funds it receives from its members and the Commonwealth's taxpayers is sufficient such that its classification as a "state-affiliated entity" for purposes of the RTKL is reasonable.  Thus, it cannot be said that this classification is arbitrary or that it bears no reasonable relationship to the object of the law. *Curtis*, 666 A.2d at 268.  Therefore, because PIAA meets the definition established for the class in which it is included, and the RTKL's classification of PIAA as a state-affiliated entity is not unconstitutional special legislation and does not violate PIAA's equal protection rights, the OOR properly determined that PIAA is subject to the RTKL.

### B.     Whether PIAA's procedural due process rights were violated.

Second, PIAA argues that PIAA's procedural due process rights were violated as a result of the OOR's unconstitutional commingling of functions in one person who both helped adjudicate the appeal litigated against PIAA and denied PIAA's Petition for Reconsideration.  Specifically, PIAA contends that, in having its Petition for Reconsideration decided by the OOR's Chief Counsel, the OOR violated PIAA's due process rights.  Thus, PIAA asks this Court to issue an order vacating the denial of PIAA's Petition for Reconsideration and remand this matter to the OOR with instructions to grant reconsideration of the underlying Final Determination and accept additional evidence.

Requester responds that PIAA fails to show how the OOR's denial of its Petition for Reconsideration, which occurred well after the close of the administrative record, prejudiced PIAA's ability to present evidence in support of

14

nondisclosure. To the contrary, Requester asserts that the record is clear that PIAA created this problem for itself by failing to conduct a timely, good faith search and assessment of the public nature of the responsive records.

The violation of due process through the commingling of adjudicatory and prosecutory functions was established in *Lyness v. State Board of Medicine*, 605 A.2d 1204 (Pa. 1992), and clarified in *Harmon v. Mifflin County School District*, 651 A.2d 681 (Pa. Cmwlth. 1994). This Court has explained:

> In *Lyness*, the State Board of Medicine convened to hear evidence against a physician accused of sexual misconduct and determined that formal charges should be lodged and a formal hearing held. Subsequently, the State Board of Medicine, with many of the same members participating, reviewed the hearing examiner's recommendation and decided to permanently revoke the physician's license to practice medicine. Our [S]upreme [C]ourt held that, **because the members of the State Board of Medicine made both the decision to initiate the professional licensing prosecution and then acted as the ultimate fact-finder** in determining whether a violation had occurred, **they impermissibly commingled their prosecutorial and adjudicatory functions and violated the physician's due process right** to a fair and impartial tribunal.

*Behm v. Wilmington Area Sch. Dist.*, 996 A.2d 60, 64 (Pa. Cmwlth. 2010) (emphasis added).

> In *Harmon*, this [C]ourt recognized that **the due process protections needed in *Lyness*-type cases are not required in every case.**[] We established a "continuum of due process rights" approach, observing that, "[t]**he type of due process hearing that is required is dependent upon the forum**, **the relationship of the parties**, **the interests at stake and should be consistent with the goal of reducing the risk of arbitrary government action.**" *Harmon*, 651 A.2d at 685.

*Behm*, 996 A.2d at 65-66 (second alteration in original) (emphasis added) (footnote omitted).

Here,

15

unlike discipline by agencies regulating licenses (*Lyness*) or employee terminations for cause (*Harmon*), [RTKL adjudications] are non-disciplinary in nature, and, consequently, this matter is controlled by cases at the opposite end of the due process spectrum. In non-disciplinary cases, such as teacher suspensions resulting from the curtailment of educational programs, our courts have determined that no one is acting in a prosecutorial capacity and that the purpose of such a hearing is merely "to ensure that the reasons for the [action] existed and that all procedural requirements were followed." *Callahan v. Mid Valley Sch*[.] *Dist*[.], 720 A.2d 815, 817 (Pa. Cmwlth. 1998) . . . ; *see also Krupinski v. Vocational Tech*[.] *Sch*[.]*, E*[.] *Northampton* [*Cnty.*], . . . 674 A.2d 683 ([Pa.] 1996).[] . . . [The RTKL adjudication] was a similar, non-disciplinary [adjudication], the sole purpose of which was to [determine whether the Requester was entitled to disclosure of the requested documents].

*Behm*, 996 A.2d at 66 (footnote omitted). Accordingly, we conclude that OOR's Chief Counsel did not impermissibly commingle functions in this case and, therefore, that the OOR did not violate PIAA's procedural due process rights.

C. *Whether the OOR erred in granting unredacted access to PIAA's legal invoices and not providing PIAA additional time.*

PIAA next contends that the OOR erred by granting unredacted access to PIAA's legal invoices and by not providing PIAA additional time to provide a significant volume of documents that required redaction. PIAA asserts that, despite Requester's agreement that redactions would be necessary and that a line-by-line analysis of legal invoices would need to be performed for privileged content, the OOR granted access to unredacted legal invoices without even inquiring into the need for redactions or performing an *in camera* review.

Requester rejoins that this Court should reject PIAA's request for an additional opportunity to present new evidence in support of nondisclosure as contrary to the statutory procedures that ensure expeditious access to public records. Requester declares that PIAA has offered no explanation as to why it needed more than two months to retrieve electronic copies of its invoices from the law firm that

16

represented PIAA in a prior case before the OOR. Requester maintains that PIAA's refusal to comply with its statutory duties to timely retrieve and assess the public nature of its legal invoices did not require the OOR to suspend administrative proceedings indefinitely.

Relative to the legal invoices, the OOR stated:

> [W]hile [] PIAA states that the relevant invoices "will need to be redacted," [] PIAA presents no evidence in support of any redactions. Specifically, [] PIAA's submissions fail to indicate what would need to be redacted and the basis for such redactions. Notably, although [] PIAA states that it is waiting to receive the responsive invoices in electronic form from its attorneys, [] PIAA acknowledges that it has in its possession the invoices in paper format. As such, [] PIAA has had the opportunity to review the responsive invoices and determine any necessary redactions. Moreover, the fact that a request may entail retrieving a large number of documents does not relieve the agency's duty to comply with the RTKL. *See* [] *Dep't of Env*[*'t*] *Prot. v. Legere*, 50 A.3d 260, 265 (Pa. [Cmwlth.] 2012); *see also Ruggiero v. Lackawanna County*, OOR Dkt. AP 2014-0043, 2014 PA O.O.R.D. LEXIS 157[, filed Feb. 10, 2014] ("[A] request involving the detailed review of voluminous documents does not relieve the agency of its requirements to presume the records are open and available and [to] respond in accordance with the RTKL[.]"); *Falcetta v. Grove City Area Sch. Dist.*, OOR Dkt. AP 2018-0908, 2018 PA O.O.R.D. LEXIS 908[, filed July 27, 2018]. Accordingly, to the extent the legal invoices currently exist in electronic format, they are subject to disclosure. *See* [Section 708(a)(1) of the RTKL,] 65 P.S. § 67.708(a)(l).

(Final Determination at 8-9; R.R. at 246a-47a (11th and 12th alterations in original).)

Section 708(a)(1) of the RTKL provides: "The burden of proving that a record of a Commonwealth agency or local agency is exempt from public access shall be on the Commonwealth agency or local agency receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). Here, PIAA submitted Dr. Lombardi's affidavit, stating, in relevant part:

40. PIAA has no responsive records in an electronic format.

41. PIAA receives its legal invoices in a paper format.

17

42. I have requested electronic records from law firms which [PIAA has] used but have not received them.

43. There are several thousand pages of such invoices.

44. Once the records arrive, they will need to be redacted.

45. It will take weeks to do so since none of those documents are [] currently in a redacted format and must be created by PIAA.

46. [PIAA's] standard redaction process involves going through entries on each printed invoice.

47. I have recently undertaken this task with the same requested records pursuant to an earlier request by another individual for the same documents, so I know how long the effort will take. However, those redacted records were destroyed once the requester informed PIAA that he would not pay for the costs of reproduction. That destruction occurred prior to receiving [Requester's] request. Consequently, I would need to replicate the process here.

(R.R. at 139a-40a.)

Although not specifically averred, PIAA represented that the invoices contain privileged information based on its repeated references to redaction. (*See* R.R. at 3a (PIAA Response #1) ("All such records, if they exist, must be redacted prior to production[].");  *see also* R.R. at 139a (Dr. Lombardi Affidavit ¶44) ("Once the records arrive, they will need to be redacted.").) Further, it is also apparent to this Court that Requester expected the invoices to be redacted upon disclosure. (*See* R.R. at 7a (Request Item 1) ("Using the cheapest redaction (if necessary . . . .)"); *see also* R.R. at 14a-15a (Requester's Position Statement) ("My position is that any redactions (which are not admitted is necessary) on electronic records would need to be performed electronically . . . .") ("Put another way, it is not a 'necessarily incurred' cost to print electronic records onto paper in order to redact or copy them.").)

18

Thus, this Court is satisfied that PIAA has demonstrated that it is more likely than not that the legal invoices contain privileged information. *See Moore v. Off. of Open Recs.*, 992 A.2d 907 (Pa. Cmwlth. 2010). Accordingly, the OOR's Final Determination directing disclosure of the legal invoices is affirmed as modified. To the extent the legal invoices currently exist in electronic format, PIAA is directed to produce the redacted legal invoices to Requester with an accompanying privilege log explaining why a privilege applies to each redacted entry.[10]

### D. Whether OOR erred by permitting the record access provisions of the RTKL to supersede the Nonprofit Law.

Fourth, PIAA argues that the OOR erred by permitting the record access provisions of the RTKL to supersede the Nonprofit Law. Specifically, PIAA contends that the RTKL provides an exemption for disclosure of records where such disclosure conflicts with other laws. PIAA declares that it is a nonprofit corporation subject to the Nonprofit Law, and, therefore, it is restricted thereby to only providing its records to its members and board members, and only for proper purposes. PIAA claims that the RTKL removes those limitations on PIAA and treats it differently than every other comparable nonprofit corporation in Pennsylvania.

In response, Requester argues that no provision in the Nonprofit Law conflicts with the RTKL. Requester asserts that Sections 5508(b) and 5512 of the Nonprofit Law permit members to access records. *See* 15 Pa.C.S. §§ 5508(b), 5512. Requester retorts that PIAA argues the inverse, that the General Assembly intended all

---

[10] "[This Court's] standard of review is *de novo*[,] and [] its scope of review is broad or plenary when it hears appeals from determinations made by appeals officers under the RTKL." *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 477 (Pa. 2003). Pursuant to *Bowling*, rather than remand to the OOR to direct PIAA's disclosure of the redacted legal invoices, this Court will retain jurisdiction for that purpose only. *But see Barnett v. Pa. Dep't of Pub. Welfare*, 71 A.3d 399 (Pa. Cmwlth. 2013) (wherein this Court remanded to the OOR because the OOR summarily dismissed an appeal rather than addressing the issues). Here, because the OOR reviewed the evidence and addressed the issues, this Court has discretion to retain jurisdiction.

corporate records to be private. Requester maintains that neither of these provisions deem nonprofit corporate records confidential.

Section 305(a)(3) of the RTKL provides, in relevant part:

A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
. . . .

(3) the record is exempt from disclosure under any other [f]ederal or [s]tate law or regulation or judicial order or decree.

65 P.S. § 67.305(a)(3). Section 306 of the RTKL states: "Nothing in this act shall supersede or modify the public or nonpublic nature of a record or document established in [f]ederal or [s]tate law, regulation or judicial order or decree." 65 P.S. § 67.306. Section 102 of the RTKL defines a "public record" as "[a] record, including a financial record, of a Commonwealth or local agency that . . . is not exempt from being disclosed under any other [f]ederal or [s]tate law or regulation or judicial order or decree[.]" 65 P.S. § 67.102.

This Court has held: "In order to constitute an exemption under Section 305(a)(3) of the RTKL, the [] statute must expressly provide that the record sought is confidential, private, and/or not subject to public disclosure." *Ali v. Phila. Plan. Comm'n*, 125 A.3d 92, 99-100 (Pa. Cmwlth. 2015). Section 5508(b) of the Nonprofit Law permits "[e]very member . . . a right to examine . . . the membership register, books and records of account, and records of the proceedings of the members, directors and any other body[.]" 15 Pa.C.S. § 5508(b). Section 5512(a) of the Nonprofit Law permits,

[t]o the extent reasonably related to the performance of the duties of the director, . . . a director of a nonprofit corporation . . . to inspect and copy corporate books, records and documents and, in addition, to inspect[] and receive information regarding, the assets, liabilities and operations of the corporation and any subsidiaries of the corporation incorporated

20

or otherwise organized or created under the laws of this Commonwealth that are controlled directly or indirectly by the corporation[.]

15 Pa.C.S. § 5512(a). Because the above-quoted sections of the Nonprofit Law do not state that nonprofit corporate records are "confidential, private, and/or not subject to public disclosure," they are not exempt from disclosure under the RTKL. *Ali*, 125 A.3d at 100. Accordingly, the OOR properly determined that the Nonprofit Law did not preclude disclosure of PIAA's records.

### E. Whether PIAA failed to conduct a good faith search.

Turning now to the issues presented in Requester's Petition for Review, Requester first argues that PIAA failed to conduct a good faith search and, therefore, acted with the requisite bad faith to support an award of statutory penalties and attorney fees. Specifically, Requester contends that "PIAA has effectively nullified the RTKL's expeditious access procedures by refusing to comply with its duties to conduct a good faith search for and to assess the public nature of responsive financial records in a timely manner." (Requester's First Br. at 16.) Requester submits that "[t]he failure of an agency to comply with its duties under the RTKL constitutes bad faith." (*Id.*) Therefore, Requester asserts that this Court should order "PIAA to perform a good faith search for all responsive records, including records responsive to Request Item 7,[11] impose civil penalties in the amount of $1,500.00 per [] record withheld, and award Requester attorney fees and costs." (*Id.* at 16-17.)

PIAA rejoins that, even though it asserted a good faith legal basis that it is not subject to the RTKL, it nevertheless complied with the RTKL by: timely issuing an extension notice under Section 902 of the RTKL, 65 P.S. § 67.902; timely responding to the Request in accordance with Section 901 of the RTKL, 65 P.S.

---

[11] Request Item 7 will not be considered with regard to the issue of PIAA's bad faith. *See infra* pp. 25-27.

21

§ 67.901; repeatedly making timely submissions in accordance with the Appeals Officer's multiple deadlines; timely filing its Petition for Reconsideration; and timely petitioning for review of the Final Determination and the denial of its Petition. In addition, PIAA retorts that it provided Requester with records responsive to Request Items 5 and 8 well in advance of the 30-day deadline to do so. PIAA asserts that, because it performed its mandatory duties under the RTKL, this Court should reject the request for an award of attorney fees or civil penalties.

> Section 1304(a) of the RTKL provides:
>
> If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:
>
> (1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or
>
> (2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

65 P.S § 67.1304(a). Section 1305(a) of the RTKL further provides: "A court may impose a civil penalty of not more than $1,500[.00] if an agency denied access to a public record in bad faith." 65 P.S § 67.1305(a).

> The Pennsylvania Supreme Court has explained:
>
> It is well[ ]settled that "[j]ust like a private corporation, any governmental agency or political subdivision, and indeed the Commonwealth itself can only act or carry out its duties through real people - its agents, servants or employees." *Moon Area Sch*[.] *Dist. v. Garzony*, . . . 560 A.2d 1361, 1366 ([Pa.] 1989). Section 901 of the RTKL places upon an agency the responsibility to "make a good faith effort to determine if the record requested is a public record . . . and to

22

respond as promptly as possible under the circumstances existing at the time of the request." 65 P.S. § 67.901. Section 502(b)(1) [of the RTKL] provides that the open records officer is the individual who receives the request and "track[s] the agency's progress in responding to requests." 6[5] P.S. § 67.502(b)(1).

*Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 243 A.3d 19, 27 (Pa. 2020) (sixth alteration in original). The *Uniontown Newspapers* Court held: "[This] Court did not err when it determined that [the agency] acted in bad faith at the request stage, in significant part because the open records officer failed to act with diligence in response to [the requester's] request." *Id.* at 28.

> "[T]here is simply nothing in the RTKL that authorizes an agency to refuse to search for and produce documents based on the contention it would be too burdensome to do so." Such concerns must give way to the important goal of government transparency, which is the hallmark of the RTKL.

*Id.* (quoting *Legere*, 50 A.3d at 266). "[A] good faith response - either to produce records or assert an exemption - cannot occur absent a good faith search, followed by collection and review of responsive records, so an agency has actual knowledge about the contents of the relevant documents." *Id.* at 28-29 (quotation marks omitted).

This Court has explained:

> [T]he purpose of Section 1305 of the RTKL is not to remedy harm to a party but to penalize conduct of a local agency and to provide a deterrent in the form of a monetary penalty in order to prevent acts taken in bad faith in the future. The purpose of Section 1305 of the RTKL is akin to the purpose of the penalty provision of the Sunshine Act,[12] which makes it a summary offense for "[a]ny member of any agency who participates in a meeting with the intent and purpose by that member of violating this chapter," and provides that[,] upon conviction, the member shall pay the costs of prosecution plus a fine within a defined range, the exact amount of which to be determined by

---

[12] 65 Pa.C.S. §§ 701-716.

the sentencing authority. 65 Pa.[]C.S. § 714. However, unlike the penalty provision in the Sunshine Act, the focus in Section 1305 of the RTKL is not on the mental state of the actor but the actions taken by the agency. *Compare* Section 1304(a)(1) of the RTKL, 65 P.S. § 67.1304(a)(1).

*Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1141 (Pa. Cmwlth. 2017).

Here, the OOR concluded:

PIAA properly extended its time to respond to the Request by [30] days, 65 P.S. § 67.902(b)(2), and, ultimately, issued its response in a timely manner. Moreover, while the OOR disagrees with the PIAA's legal arguments regarding whether it is subject to the RTKL, the OOR declines to make a finding of bad faith on that basis. Likewise, [] PIAA's assertion that certain records do not exist, or that responding to portions of the Request "would significantly impact on [sic] the operations of PIAA" does not rise to the level of bad faith.

(R.R. at 254a.) Although the OOR reversed PIAA with respect to the legal invoices, this Court granted PIAA the opportunity to redact the legal invoices as necessary. *See supra* pp.18-19. Further, this Court's decision herein is the first dispositive ruling on the issue of whether the RTKL applies to PIAA. *See supra* pp. 6-9. Moreover, PIAA did, in fact, request the invoices from the appropriate law firms. (*See* R.R. at 139a (Dr. Lombardi Affidavit ¶42) ("I have requested electronic records from law firms which we have used . . . .").) Under the circumstances, this Court holds that PIAA's actions do not constitute bad faith.[13] Accordingly, the imposition of a civil penalty is not warranted, and Requester is not entitled to attorney fees and costs.

---

[13] Given this Court's disposition with respect to the legal invoices (Request Item 1), the issue of PIAA's bad faith relative to said disclosure will remain open.

24

*F. Whether PIAA failed to prove that it does not have possession, custody, or control of any records responsive to Request Item 7.*

Finally, Requester argues that PIAA failed to prove that it does not have possession, custody, or control of any records responsive to Request Item 7. Specifically, Requester contends that the OOR did not offer any analysis of how PIAA's evidence was sufficient to establish the non-existence of records. Rather, Requester claims that the OOR simply restated several paragraphs of Dr. Lombardi's affidavit and held that a sworn affidavit may be sufficient to confirm the non-existence of records.

In addition, Requester asserts that the OOR failed to address Requester's contentions that PIAA presented no evidence that Dr. Lombardi asked any of the 32 members of PIAA's governing Board of Directors to search for responsive records. Further, Requester claims that Dr. Lombardi's assertion that he conducted a thorough search of all PIAA records relating to that topic and found no responsive records is ambiguous as to the nature and extent of the search. Requester maintains that Dr. Lombardi cannot confirm that communications only took place between himself and legal counsel if he did not speak to any of the other 32 members of PIAA's Board of Directors.

PIAA argues that, under the RTKL, the preponderance of the evidence standard applies, which is the lowest evidentiary standard tantamount to a more likely than not inquiry. *See Delaware County v. Schaefer ex rel. Phila. Inquirer*, 45 A.3d 1149 (Pa. Cmwlth. 2012). PIAA retorts that the OOR correctly determined that it was "more likely than not" that no responsive records exist based on the evidence provided by PIAA. PIAA asserts that when an agency "submits a sworn or unsworn affidavit that it was not in possession of the record, it satisfies the agency's burden in demonstrating the non-existence of the record in question." *Moore*, 992 A.2d at 909.

PIAA declares that Request Item 7 sought written communications exchanged between PIAA officials (and between PIAA officials and counsel) between January 1 and November 2, 2020, that discuss the topic of PIAA being improperly included in the RTKL. In accordance with *Moore*, PIAA argues that it presented Dr. Lombardi's affidavit, which provides details from the highest official at PIAA, under penalty of perjury, concerning his personal knowledge regarding discussions of the specific subject matter listed in Request Item 7 and how those discussions were limited solely to himself and legal counsel. Accordingly, PIAA claims that it demonstrated that it was "more likely than not" that no records responsive to Request Item 7 exist. *Id.*

Concerning Request Item 7, PIAA provided Dr. Lombardi's affidavit, wherein he stated, in relevant part:

> 30. Request [Item] 7 . . . sought copies of all written communications between PIAA officials, including legal counsel between January 1, 2020[,] and the date of his submission that discuss the topic of PIAA being improperly included in the RTKL.
>
> 31. I conducted a thorough search of all PIAA records relating to that topic and found no responsive records.
>
> 32. I am also aware that any communications on that subject would be limited to me and legal counsel as no other PIAA official was involved in 2020 in discussion of that issue as of the date of the [R]equest.
>
> 33. I am also aware that all communications between me and legal counsel on that topic in 2020 were oral. There were no 2020 written communications on that subject prior to submission of the [R]equest.

(R.R. at 138a.) The OOR explained:

> Under the RTKL, a sworn affidavit may serve as sufficient evidentiary support for the non[-]existence of records. *See Sherry* [*v. Radnor Twp. Sch. Dist.*], 20 A.3d [515,] 520-21 [(Pa. Cmwlth. 2011)]; *Moore*, 992 A.2d at 909. Based on the evidence provided--the affidavit of [] PIAA's Executive Director and Open Records Officer, who would have the capacity to search for responsive records--the PIAA has

26

demonstrated that it conducted a good faith search for responsive records. *See Hays v. Pa. State Police*, OOR Dkt. AP 2015-0193, 2015 PA O.O.R.D. LEXIS 294[, filed Mar. 18, 2015] (finding that an agency conducted a good faith search by "contact[ing] the [b]ureau most likely to possess responsive records, and . . . explain[ing] why that [b]ureau is most likely to possess those records"); *Yaldm v. Municipality of Monroeville*, OOR Dkt. AP 2017-1946, 2017 PA O.O.R.D. LEXIS 1685[, filed Nov. 22, 2017]. Accordingly, [] PIAA has met its burden of proof that it does not possess records responsive to Item 7 of the Request. *See Hodges* [*v. Pa. Dep't of Health*], 29 A.3d [1190], 1192 [(Pa. Cmwlth. 2011)].

(R.R. at 251a.)

In *Sherry*, this Court considered whether a requester had the right to depose or cross-examine witnesses who submitted affidavits in connection with a RTKL dispute before the OOR. In holding that the trial court did not err in refusing to permit the requester to depose or cross-examine the affiants, we determined that there was "no error on [the] OOR's part to the extent that it relied upon the affidavits in rendering its final determination." *Sherry*, 20 A.3d at 521; *see also Moore*, 992 A.2d at 909 (holding that both sworn and unsworn affidavits stating that the requested record did not exist were sufficient to carry the agency's burden of demonstrating the non-existence of the record in question). The same is true in the present case. Dr. Lombardi's affidavit states that he conducted a thorough search for the items requested and that such did not exist. We perceive no error in the OOR's reliance on Dr. Lombardi's affidavit as it pertains to Item 7 of the Request, *id.*, and, accordingly, we affirm the OOR's determination that records responsive to Item 7 of the Request do not exist.

## III. CONCLUSION

For all of the above reasons, the OOR's Final Determination is affirmed as modified with respect to Request Item 1.

_____
**RENÉE COHN JUBELIRER**, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Simon Campbell, : 
      Petitioner : 
  : 
  : 
   v. : 
  : 
Pennsylvania Interscholastic : 
Athletic Association (Office of : 
Open Records), : No. 25 C.D. 2021
      Respondent : 


Pennsylvania Interscholastic Athletic : 
Association, Inc., : 
      Petitioner : 
  : 
  : 
   v. : 
  : 
Simon Campbell (Office of : No. 107 C.D. 2021
Open Records), : No. 170 C.D. 2021
      Respondent : 

# **O R D E R**

**NOW**, November 30, 2021, the Office of Open Records' (OOR) January 13, 2021 Final Determination is **AFFIRMED as MODIFIED** with respect to Simon Campbell's (Requester) request for legal invoices that were paid by Pennsylvania Interscholastic Athletic Association (PIAA) to any and all attorneys/law firms between the dates of January 1, 2012, and the date of the request (legal invoices). To the extent they exist in electronic format, PIAA is directed to produce redacted copies of the legal invoices and an accompanying privilege log to Requester within 30 days of the exit date of this Order. The OOR's February 5, 2021 denial of PIAA's Petition for Reconsideration is **AFFIRMED**.

Jurisdiction retained.

 

_____
**RENÉE COHN JUBELIER**, Judge