IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K. H., a minor, and Detrell Hutcherson,     :
parent and sole legal custodian of the      :
minor, K. H.                                 :
                                             :
                                             :
                v.                           : No. 168 C.D. 2021
                                             : Argued: February 7, 2022
Pennsylvania Interscholastic Athletic        :
Association, Dr. Robert A. Lombardi,         :
in his capacity as Executive Director        :
                                             :
Appeal of: Pennsylvania Interscholastic      :
Athletic Association                         :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED: April 21, 2022


        Before the Court is the appeal of the Pennsylvania Interscholastic
Athletic Association (PIAA) from the February 16, 2021 order of the Allegheny
County Court of Common Pleas (trial court), which denied the PIAA's post-trial
motion seeking reconsideration of the trial court's February 2, 2021 order which
granted a permanent injunction enjoining the PIAA from prohibiting K.H. (Student)
from participating in postseason basketball for the 2020-2021 school year. Student
and his father and sole legal custodian, Detrell Hutcherson (Father), filed a complaint
in equity in the trial court and requested a preliminary injunction after the PIAA had

denied Student a waiver to participate in postseason basketball. The PIAA denied Student's waiver based on Article VI.2.C of the PIAA bylaws, which render a student ineligible to compete in the postseason unless the student can demonstrate "that [a school] transfer was necessitated by exceptional and unusual circumstances beyond the reasonable control of the student's family." Reproduced Record (R.R.) at 250a. In addition, the PIAA also seeks to strike certain exhibits from Student and Father's brief.[1] After careful review, we affirm.

The relevant facts as summarized by the trial court are as follows. Student attended Kiski Area School District (sending district) from grades 8 through 10 where he played football and basketball. During the summer of 2020, Father and Student relocated from their residence in Vandergrift, within the sending district, to an apartment in Warrendale, located within the North Allegheny School District (receiving district). The new apartment is very close to Father's work at the United States (U.S.) Post Office. Student officially enrolled in the receiving district on June 29, 2020, and Father's lease was dated July 1, 2020. Before moving, Father experienced difficulties commuting from Vandergrift to his job in Warrendale, which required a 39-mile commute each way, and he was on the verge of losing his means of transportation, which was a relative's car. On June 27, 2020, Father participated in a disciplinary hearing at work, in which his supervisor and union representative advised him to move closer to work or be on the path toward termination because of tardiness and attendance issues which stemmed from his long

---

[1] This Court ordered that the PIAA's application to strike certain exhibits and portions of Student and Father's brief be considered with the merits in an Order dated November 16, 2021. Although Student and Father requested that the PIAA's appeal be dismissed as moot, which this Court ordered to be considered with the merits in an Order dated October 24, 2021, Student and Father withdrew their request at oral argument on February 7, 2022, conceding that the appeal is not moot. Therefore, we will not address the issue of mootness.

2

commute. Before the disciplinary hearing, Father transferred into a new position with the post office, which changed his status from a temporary to a permanent employee, awarded him a significant salary increase, and gave him the opportunity to work more hours, including overtime. Trial Court 2/2/21 Opinion at 3-4.

Due to Student's transfer between school districts, the receiving district requested a decision regarding Student's athletic eligibility from the Western Pennsylvania Interscholastic Athletic League (WPIAL).[2] In its request, the receiving district indicated that Student's transfer was "necessitated by exceptional and unusual circumstance(s) beyond the reasonable control of [] [S]tudent's family" due to "[a] change of residence necessitated by a change in employment" and "other" reasons. R.R. at 346a. Attached to this request was Father's lease, employment verification, Student's education records, two undated letters from Father's employer summarizing Father's tardiness and the employer's advice that Father move closer to work or face further disciplinary action, proof of Father's change of address on his driver's license, and Father's resignation from an assistant coaching position with the sending district. *Id.* at 347a-60a. The sending district did not approve Student's transfer, indicating it believed Student's transfer was "materially motivated in some way by an athletic purpose." *Id.* at 366a. Hearings were held before the WPIAL, at which representatives from the sending district, receiving district, Father, and Student attended. The WPIAL voted to declare Student ineligible to participate in basketball for one year from the date of transfer, because it found that there was a reasonable likelihood that Student's transfer was materially

---

[2] For administrative purposes, the PIAA is divided into 12 geographical districts, each of which has a district committee comprised of members elected by the PIAA member schools in that district. The District VII committee is commonly known as the WPIAL. The sending district and receiving district are members of the WPIAL. *See* PIAA's brief at 7-8.

motivated in some way by an athletic purpose related to basketball, in violation of Article VI.5.C of the PIAA bylaws, which the WPIAL outlined in a written decision following the second hearing. *Id.* at 331a-35a. The WPIAL did not address Student's eligibility for postseason basketball play. *Id.* at 337a.

The receiving district appealed to the PIAA, which held a hearing on October 7, 2020, at which representatives from the sending district and receiving district attended and testified, and where Student and Father attended and were represented by counsel. R.R. at 361a-445a. The parties agreed that the PIAA would consider Student's regular season and postseason eligibility at the appeal hearing. The hearing transcript revealed that after 73 pages of testimony related to Student's regular season eligibility, the sending district withdrew its objection to the transfer, based on the lack of evidence that Student's transfer was motivated by athletic intent. R.R. at 432a; Trial Court 2/2/21 Opinion at 10. The hearing transcript revealed that the PIAA then considered Student's postseason eligibility, comprising review of documents already submitted, and review of two pages of testimony and argument. R.R. at 436a-38a; Trial Court 2/2/21 Opinion at 10. After adjourning to executive session for 16 minutes to deliberate on both issues, the PIAA voted to restore Student's eligibility for the regular season basketball, and to deny Student's eligibility for postseason basketball and football. R.R. at 442a-44a. The PIAA issued a written decision dated October 9, 2020, summarizing the hearing and its findings. *Id.* at 446a-448a.

In its decision, PIAA Executive Director Dr. Lombardi stated that "[a] separate review of the testimony and evidence resulted in a determination that [Student] did not qualify for a waiver of his postseason ineligibility in the sports of football and basketball during the 2020-2021 school year." R.R. at 446a. The PIAA

4

concluded, based on its analysis of Article VI.2.C of the PIAA bylaws, that it "may waive the restriction on post[]season eligibility only if the student demonstrates that the transfer was necessitated by exceptional and unusual circumstances beyond the reasonable control of the student." *Id.* at 448a. The PIAA also concluded that "the circumstances must be such that, for reasons beyond his or her control, the student effectively had no choice but to transfer." *Id.* The PIAA further found that the receiving district "sought to have postseason eligibility restored for [Student] solely on the basis that the move into that school district would satisfy the acceptable standard of a 'change in residence necessitated by a change in employment.'" *Id.* The PIAA found, however, "there was no 'change in employment,' but instead a change of residence to better accommodate [Father's] current USPS [U.S. Postal Service] employment status. The [PIAA] determined that it would not deviate from the very limited reasons for which a waiver might be granted." *Id.* The PIAA further concluded that, "[p]erhaps more importantly, considering the individualized circumstances presented, the [PIAA] determined that while the change in residence may have been desirable for [Father], it was not a necessity nor compelled." *Id.* The PIAA found that there were "certainly other means" by which Father could have addressed his tardiness concerns. *Id.* The PIAA further found that "[w]aivers are only permitted for new and highly unusual circumstances that are beyond the family's control. This did not meet that standard." *Id.* The receiving district requested that the PIAA reconsider its decision on Student's postseason eligibility, which it declined to do. *Id.* at 452a-54a. Student and Father, now represented by new counsel, sought review of the PIAA's decision to deny Student postseason

eligibility by filing an amended complaint and motion for injunctive relief with the trial court.[3]

The trial court held hearings on December 10, 2020 and December 17, 2020, at which it heard evidence and argument on the preliminary injunction request. Trial Court 2/2/21 Opinion at 2. The trial court denied Student and Father's preliminary injunction in an order dated December 17, 2020, from which Student and Father did not appeal. O.R. at 1134. The trial court reasoned that "[t]he loss of an opportunity to play interscholastic athletics for a potential playoff season does not constitute irreparable harm," citing *Revesz v. Pennsylvania Interscholastic Athletic Association, Inc.*, 798 A.2d 830 (Pa. Cmwlth. 2002). *Id.* The trial court reasoned that because irreparable harm is one of the six elements that must be proved to prevail on a preliminary injunction, Student and Father did not meet their burden. *Id.* at 6.

The trial court ordered that a final hearing on the permanent injunction take place on January 13, 2021, at which the parties could proceed on the record as established at the previous proceedings or present new evidence. Original Record (O.R.) at 1135. The parties stipulated that they would not call additional witnesses. *Id.* at 1135-37; Trial Court 2/2/21 Opinion at 7. After the parties presented arguments on January 13, 2021, the trial court granted Student and Father's request for a permanent injunction, stating that Student "is hereby granted full and complete eligibility to participate in the post[]season and/or any WPIAL and/or PIAA playoff tournament for the 2020-2021 basketball season." *Id.* at 1783. The PIAA notified

---

[3] Student and Father's initial complaint included federal claims and was removed to federal court. After the parties stipulated that Student and Father would file an amended complaint omitting the federal claims, the United States District Court for the Western District of Pennsylvania remanded the case to the trial court. Original Record (O.R.) at 1131-32.

6

the receiving district that although Student was now eligible to play in the postseason, if the trial court's decision was reversed on appeal, the receiving district would be subject to penalties under Article XIII.10 of the PIAA bylaws, which could require the receiving district to forfeit any postseason games in which Student participated, commonly known as the "restitution rule." Student and Father's Brief on the Merits, Exhibit B. Student played in two postseason basketball games, where the receiving district won the first game and lost the second game.

The trial court noted that a full hearing on the merits of a complaint seeking permanent injunctive relief does not require a showing of irreparable harm.[4] Trial Court 2/2/21 Opinion at 6. The trial court explained that its standard of review in considering athletic decisions of the PIAA was governed by our Supreme Court's holding in *Harrisburg School District v. Pennsylvania Interscholastic Athletic Association*, 309 A.2d 353, 357 (Pa. 1973), which held that "the general rule with respect to high school athletic associations, insofar as it has been enunciated, is one of judicial non-interference unless the action complained of is fraudulent, an invasion of property or pecuniary rights, or capricious or arbitrary discrimination." *Id.* at 7. The trial court explained that an action is capricious if it reflects "the wil[l]ful, deliberate disbelief of an apparently trustworthy witness, whose testimony

---

[4] To prevail on a claim for a permanent injunction, the plaintiff

> must establish a clear right to relief, that there is an urgent necessity to avoid an injury which cannot be compensated for by damages, and that greater injury will result from refusing rather than granting the relief requested. However, unlike a claim for a preliminary injunction, the plaintiff need not establish either irreparable harm or immediate relief.

*Big Bass Lake Community Association v. Warren*, 950 A.2d 1137, 1144 n.8 (Pa. Cmwlth. 2008) (citations omitted).

one has no basis to challenge," citing *Siemon's Lakeview Manor Estate v. Department of Public Welfare*, 703 A.2d 551, 556 (Pa. Cmwlth. 1997). *Id.* The trial court further explained that an action is arbitrary when the conduct is "based on random or convenient selection of choice rather than of reason or nature," citing *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996). *Id.*

The trial court then reviewed caselaw involving PIAA decisions to further define what constituted arbitrary and capricious discrimination. The trial court noted that in *Revesz* our Court concluded that the transfer rule in Article VI.2 of the PIAA bylaws was not so vague as to constitute arbitrary or capricious discrimination. *Revesz*, 798 A.2d at 836; Trial Court 2/2/21 Opinion at 7. The trial court also noted that in *Boyle by Boyle v. Pennsylvania Interscholastic Athletic Association*, 676 A.2d 695, 702 (Pa. Cmwlth. 1996), our Court found arbitrary and capricious discrimination when the PIAA's determination of a student's ineligibility based on a transfer for athletic purposes was based on rumors which were "palpably hearsay." *Id.* at 8. The trial court then reviewed the relevant PIAA bylaws, in which the preamble to Article VI governing transfers, residence, and recruiting, provides that transfers which occur prior to the junior and senior years have substantially undermined the confidence in the integrity and fairness of the postseason system. Article VI.2.B provides the general rule that, if a student who participated in a sport transfers after the 10th grade, the student is ineligible to play in the postseason for that sport. Article VI.2.C provides the transfer waiver rule, in relevant part, as follows:

> A District Committee may waive this period of ineligibility upon demonstration by the student that the transfer was necessitated by exceptional and unusual circumstances beyond the reasonable control of the student's family. For purposes of this provision the

8

following reasons WILL be deemed sufficient to meet this standard:

-A change of residence necessitated by a change in employment;

* * *

-An involuntary substantial change in financial condition and resources that compels withdrawal from a school.

* * *

All other tendered reasons will be considered by the District Committee on a case-by-case basis.

*Id.*; R.R. at 250a.

The trial court then reviewed only the record before the PIAA to determine whether its decision was arbitrary and capricious discrimination. Trial Court 2/2/21 Opinion at 9. The trial court observed that it was clear from the PIAA hearing that the "primary, if not sole" issue to be considered was Article VI.5 governing transfer for athletic purposes (the Section 5 issue). *Id.* The PIAA Chair at the hearing gave a lengthy opening statement in which the "only issue presented" was the Section 5 issue, with no mention of Article VI.2.C governing waivers for postseason play (the Section 2 issue). *Id.* Another PIAA member then described the WPIAL's decision on the Section 5 issue, with no mention of the Section 2 issue. *Id.* at 10. Thereafter, several individuals testified before the PIAA, all of whom focused on the Section 5 issue, and when it became clear that Student had not worked out with the receiving district's basketball team before he was enrolled there, the sending district withdrew its objection to the transfer. *Id.* Only then, "on page 74 of the transcript" did the PIAA Chair mention the outstanding issue of Student's Section 2 postseason eligibility. *Id.*; R.R. at 433a.

9

The trial court then summarized an exchange between Student and Father's counsel and the PIAA Chair.

> At that point, Eddie Edwards, counsel for [Student and Father], asked [the PIAA Chair] if the board would take into consideration [the sending district's] testimony supporting his eligibility in the board's decision "so we don't have to present anything else." [The PIAA Chair] responded that while he could not speak for the whole board, "as the presiding officer that's the direction I would take."

Trial Court 2/2/21 Opinion at 10 (citation omitted); R.R. at 434a. "At that moment, after 73 pages worth of testimony regarding the Section 5 issue, the [PIAA Chair] recommended that no additional evidence need be presented on the Section 2 issue," although both Student and Father were present and were presumably prepared to testify. *Id.* at 11. Student responded to a question from a PIAA board member, through PIAA's counsel, earlier in the hearing on the Section 5 issue, but neither PIAA's counsel nor any PIAA board member "had any questions for [Father] regarding his employment status, which was now before them." *Id.* The only testimony presented on the Section 2 issue was a statement from the receiving district's athletic director regarding his thoughts on the issue for one page, followed by remarks from Student and Father's counsel, for one page. *Id.*

Thus, the trial court disagreed with the PIAA's contention that there was "extensive discussion" on Father's employment at the hearing, stating "that simply is not the case." Trial Court 2/2/21 Opinion at 11. The trial court also noted that the PIAA board adjourned to executive session, deliberated for a total of 16 minutes, and returned to announce its decision, that although Student was eligible for regular season play under Section 5, he was not eligible for postseason play under Section 2. *Id.*

The trial court then found that

> a decision by a body which considers only approximately two pages of testimony from a[n] 80+ page hearing transcript, rendered in some period of time that is something less than 16 minutes (the court can only assume there was much more deliberation on the part of the case that took 80 pages worth of testimony), that decides the post[]season eligibility of [Student] is, as a matter of law, arbitrary and capricious discrimination.

Trial Court 2/2/21 Opinion at 12. The trial court also found that the PIAA's denial of Student and Father's request for reconsideration further compounded "the arbitrary and capricious nature of the PIAA's decision." *Id.* The trial court found that, "especially considering [the PIAA Chair's] suggestion at the hearing that no additional evidence be accepted on the Section 2 issue," the PIAA's unwillingness to consider new information about Father's employment "that is absolutely germane to the issues in the case" was further evidence of the arbitrary and capricious nature of the decision-making process. *Id.* "The ultimate issue in the case—the reason for [Father's] change in residence—has not been explored in detail by the PIAA up to this point, even though that was the reason set forth in the original transfer papers." *Id.*

Turning to the merits, the trial court concluded that because the PIAA's decision was arbitrary and capricious discrimination, Student's basketball postseason eligibility "must be reversed" quickly, as the postseason was due to begin in a matter of weeks. Trial Court 2/2/21 Opinion at 13. The trial court explained that, although Father's testimony at the preliminary injunction hearing was not relevant to its review of the PIAA's decision, it was relevant to the "very issues that are at the heart of the matter." *Id.* The trial court reviewed Father's testimony regarding the circumstances around his change in employment status. *Id.* The trial

11

court found Father's testimony credible about his commute, change in position, change in salary, opportunity for increased overtime, loss of the use of his grandfather's vehicle, and recommendations from his employer and union to move closer to work to avoid further disciplinary action for tardiness. *Id.* at 13-14.

The trial court then held that Student and Father presented sufficient evidence to demonstrate that their change in residence "falls within the exceptions laid out in Article VI, Section 2C, as an 'exceptional and unusual circumstance beyond the reasonable control of the student's family,'" based on a change of residence necessitated by a change of employment and involuntary change in financial conditions that compel a withdrawal from school. Trial Court 2/2/21 Opinion at 14. "Therefore, the court finds [] [S]tudent has demonstrated the Section 2C exception which would allow him to be eligible for the 2021 post[]season basketball tournament." *Id.*[5] The PIAA then appealed to this Court.[6]

Before turning to the permanent injunction issue, we first address the PIAA's motion to strike, in which the PIAA seeks to strike Exhibits B and C to Student and Father's brief and the parts of the brief which discuss them, because these documents were not part of the trial court record below. Exhibit B contains PIAA policy governing procedural standards for hearings. Exhibit C contains a letter from the PIAA to the receiving district dated February 16, 2021, and another letter from the PIAA to the receiving district dated March 1, 2021, notifying the receiving district of the PIAA's appeal, and the possibility that the restitution rule

---

[5] The trial court also dismissed Dr. Lombardi from the case because he had no individual liability. Student and Father did not appeal this issue.

[6] Our Court's standard of review for a permanent injunction is as follows: "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Township v. Jones*, 813 A.2d 659, 663-64 (Pa. 2003).

12

would result in forfeiture of postseason wins. The PIAA argues that it is well established that appellate review is limited to only the material contained in the original record. *Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974). Student and Father respond that neither document should be stricken. Student and Father respond that this Court may take judicial notice of PIAA policy in Exhibit B because it is a public record, available on the PIAA website.[7] Student and Father also respond that the PIAA referenced its hearing policy when arguing that the PIAA had discretion to deny Student and Father's reconsideration request, and, thus, it cannot argue that the policy be stricken now. Student and Father further respond that PIAA's correspondence to the receiving district in Exhibit C should not be stricken because the PIAA does not argue that the letters are not authentic, or that it cannot impose forfeiture through the restitution rule on the receiving district, which is what the letters indicate.

We deny the PIAA's request to strike Exhibits B and C to Student and Father's brief and the parts of the brief which discuss them. We may take judicial notice of the PIAA's hearing policy, just as we do with the other parts of the PIAA handbook, including its Constitution and Bylaws. Further, the PIAA cited to, sought judicial notice of, and relied upon the PIAA hearing policy in its request to the trial court for reconsideration and in its brief to this Court. O.R. at 1791; PIAA Brief at 33-34. We may also consider the PIAA letters because they were filed with the trial court with Student and Father's complaint, were not stricken below, and, therefore, are part of the trial court record. O.R. at 29-30.

---

[7] The PIAA's policy governing the conduct of hearings may be found online at: https://www.piaa.org/assets/web/documents/Handbook%20-%20Section%20II%20-%20Policies%20and%20Procedures.pdf (last visited 4/20/22).

As to the merits, the PIAA argues that the trial court erred as a matter of law when it substituted its judgment for that of the PIAA and ruled that the PIAA's decision constituted arbitrary and capricious discrimination. The PIAA correctly claims that our Court may set aside the PIAA decision only if the action complained of is fraudulent, an invasion of property or pecuniary rights or "constitutes capricious or arbitrary discrimination." *Revesz*, 798 A.2d at 835-36. The PIAA also correctly asserts that the general rule and guiding principle with respect to high school athletic associations is "one of judicial non-interference" and the remedy "lies not with the courts but within the internal operating procedures of the PIAA." *Harrisburg School District*, 309 A.2d at 357. Student and Father did not allege fraud or a deprivation of rights; therefore, the relevant question is whether the PIAA's decision constituted arbitrary or capricious discrimination. The PIAA argues that the arbitrary or capricious standard requires the Court to give great deference to the PIAA's determination, under which an appellate court may not substitute its judgment for the judgment of the fact finder, citing *Pocono Manor Investors, LP v. Pennsylvania Gaming Control Board*, 927 A.2d 209, 216 (Pa. 2007). The PIAA submits that because its decision was rationally based on the evidence presented to it, the trial court erred in finding its decision arbitrary or capricious, citing *Temple University v. Associated Hospital Services of Philadelphia*, 361 F. Supp. 263, 270-71 (E.D. Pa. 1973).

The PIAA objects to the trial court's focus on the PIAA's conduct at the appeal hearing, where the trial court found the PIAA's review of only 2 pages of testimony on the Section 2 issue, and something less than 16 minutes of deliberation on the Section 2 issue, constituted arbitrary or capricious conduct. The PIAA argues that, although most of the testimony at the hearing focused on the Section 5 issue,

14

all of the evidence presented focused on the same subject, that is, the reason for Student's transfer, and that the Section 2 and Section 5 issues necessarily overlapped. The PIAA contends that, although the trial court agreed that it was limited to the evidence presented to the PIAA to determine if the PIAA's decision was arbitrary or capricious, the trial court erred when it considered Father's testimony at the preliminary injunction hearing to determine the merits, when Father did not testify before the PIAA. The PIAA argues that it was Student and Father's burden, not the PIAA's, to ensure that sufficient evidence was presented to permit the PIAA to determine whether Father's employment status justified a waiver to allow Student's postseason play, pursuant to PIAA bylaws requiring the student to demonstrate his eligibility for waiver. R.R. at 250a. The PIAA claims that the trial court erred when it concluded that the PIAA deliberated for something less than 16 minutes on the Section 2 issue. The PIAA argues that, because the sending district withdrew its objection to Student's transfer at the hearing, the only issue remaining for the PIAA to review was the Section 2 issue.

The PIAA also objects to the trial court's conclusion that the PIAA acted arbitrarily or capriciously when it denied Student and Father the opportunity to reopen the record and submit additional evidence for reconsideration. The PIAA relies on its hearing policy, which provides guidelines for reconsideration, and generally permits reconsideration when a party has new evidence that it could not have presented at the original hearing. Student and Father's Brief, Exhibit B at X.B. The PIAA argues that it correctly denied reconsideration when Student and Father voluntarily chose not to present additional evidence regarding Father's employment status at the PIAA hearing, and when Student and Father did not claim that their evidence was newly discovered and not available to them at the time of the hearing.

15

It contends that the trial court erred when it considered Father's testimony on the preliminary injunction to determine whether the PIAA acted arbitrarily or capriciously, without legal authority to do so. It asserts that the trial court erred in granting the permanent injunction, as Student and Father failed to establish their "clear right to relief," citing in support *J.C. Ehrlich Company v. Martin*, 979 A.2d 862, 864 (Pa. Super. 2009).[8] The PIAA argues that Student and Father could not demonstrate an urgent need to avoid an injury not compensable by damages, when loss of postseason play cannot constitute irreparable harm under *Revesz*. It further argues that Student and Father failed to demonstrate their clear right to relief when Student never testified to any harm he suffered before the trial court.

In reviewing Student and Father's relevant, not peripheral, arguments, Student and Father respond that the trial court did not err when it found the PIAA's conduct at the hearing resulted in an arbitrary or capricious determination. They allege that the trial court correctly found fault with the PIAA's inadequate attention to the Section 2 issue, as evidenced by the limited testimony and deliberation on that issue. Student and Father argue that our Court's scope of review of orders granting or denying an injunction is narrow, and does not inquire into the merits of the controversy, but only examines the record to determine if there are "any apparently reasonable grounds" to grant or deny the injunction, citing *Pennsylvania Interscholastic Athletic Association, Inc. v. Geisinger*, 474 A.2d 62, 65 (Pa. Cmwlth. 1984). Student and Father argue that the trial court's decision meets that standard. They submit that the PIAA's decision was arbitrary and capricious because the hearing failed to conform to its own hearing policy. Specifically, they claim that

---

[8] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

16

WPIAL's failure to address the Section 2 issue, the PIAA's limited time and attention at the hearing on the Section 2 issue, the failure of the PIAA to announce the Section 2 issue in its scheduling notice, the failure by the PIAA Chair to mention the Section 2 issue in his introductory comments, the PIAA's failure to manage the time of presentation during the hearing, and its failure to "invite all speakers to speak before closing the meeting" all support the trial court's finding that the PIAA acted arbitrarily and capriciously. Student and Father's Brief, Exhibit B at VII.A, B, G, I, J, and K. Student and Father contend that the PIAA acted arbitrarily and capriciously when it discouraged Father from testifying as to his employment status, when the PIAA Chair responded to Student and Father's counsel that they did not have to present additional evidence. R.R. at 434a. The trial court credited Father's testimony which included the following: "I just know I wasn't afforded the opportunity to speak on why I moved. I never got the opportunity. The whole [PIAA] hearing was about [Student's] eligibility because it was an illegal transfer, it was about sports. It was never about why I moved." R.R. at 164a.

We conclude that the trial court did not commit an error of law in granting Student and Father's permanent injunction, over which our standard of review is narrow, and when the record reveals that the trial court articulated "apparently reasonable grounds" to grant the injunction. *Geisinger*, 474 A.2d at 65. We find no error of law in the trial court's conclusion that the PIAA acted with arbitrary and capricious discrimination when it devoted little time to the Section 2 issue, deliberated for less than 16 minutes, failed to offer Father the opportunity to testify about his employment status directly relevant to the Section 2 issue, and essentially discouraged Student and Father from presenting additional evidence when the PIAA Chair stated to counsel, "that's the direction I would take." R.R. at

17

434a. Although we recognize that under *Harrisburg School District*, 309 A.2d at 357, judicial interference in PIAA matters is limited, and the trial court may not substitute its judgment for that of the PIAA, the trial court did not do so here. The trial court did not substitute its findings for the PIAA's, but rather reviewed the PIAA's conduct at the hearing, and concluded, as a matter of law, that the PIAA's conduct constituted "arbitrary or capricious discrimination." *Id.*

Pursuant to Pa.R.Civ.P. 1531(a), the trial court was permitted to receive testimony and evidence on Student and Father's request for injunctive relief, stating that, at a hearing, "the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require." The PIAA points to no rule that would prohibit the trial court from receiving testimony and evidence in an injunction hearing. We note that, on other occasions, trial courts considering injunctive relief in PIAA cases received testimony and evidence at those hearings, with no assignment of error. *See*, *e.g.*, *Geisinger*, 474 A.2d at 64; *Boyle*, 676 A.2d at 699; and *Revesz*, 798 A.2d at 834. The trial court carefully explained that its review of the PIAA decision was limited to the record before the PIAA below, but its consideration of whether Student and Father were entitled to injunctive relief included the record below and the credited testimony at the preliminary injunction hearing, especially Father's testimony about his employment status, reasons for moving, and his lack of opportunity to present employment testimony to the PIAA. Under *Geisinger*, 474 A2d at 65, we cannot conclude that the trial court erred when its decision to grant the injunction was based on "any apparently reasonable grounds."

18

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

President Judge Cohn Jubelirer did not participate in the decision of this case. Judge Wallace did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K. H., a minor, and Detrell Hutcherson, : 
parent and sole legal custodian of the : 
minor, K. H. : 
 : 
 : 
 v. : No. 168 C.D. 2021
 : 
Pennsylvania Interscholastic Athletic : 
Association, Dr. Robert A. Lombardi, : 
in his capacity as Executive Director : 
 : 
Appeal of: Pennsylvania Interscholastic : 
Athletic Association : 


# **O R D E R**


AND NOW, this 21st day of April, 2022, the order of the Allegheny County Court of Common Pleas dated February 16, 2021, is AFFIRMED. The Pennsylvania Interscholastic Athletic Association's application to strike is DENIED. K.H. and Detrell Hutcherson's application to dismiss as moot is DENIED as withdrawn.


_____
MICHAEL H. WOJCIK, Judge